WILLIAM F. BURKE, APPELLANT *v.* JAMES E. POWERS' ESTATE.

January Term, 1927.

Present:   WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed May 4, 1927.

*Executors and Administrators—Evidence That Claimant for Services Against Estate Had Received Proceeds of Life Insurance Policy on Life of Deceased—Effect of Receiving without Objection Evidence Similar to That Previously Objected and Excepted to—Supreme Court Rule 9—G. L. 1892 —Meeting and Explaining Testimony of Living Witness When Executor or Administrator Party.*

1.  In action against estate on implied contract to pay for services rendered deceased, evidence that plaintiff had received proceeds of life insurance policy on life of deceased, *held* inadmissible to meet plaintiff's evidence that deceased had said, "he would be cared for," it appearing that policy in question was payable to another beneficiary and by such beneficiary assigned to plaintiff after death of deceased, there being no logical connection between payment of policy to plaintiff and what deceased said about taking care of him.

2.  Error in admission in evidence of inadmissible testimony over objection and exception, *held* harmless, under former rule 7 of Supreme Court (now rule 9), providing that no judgment shall be reversed for error unless court believes error to have injuriously affected rights of parties, where subsequent witness testified to same fact without objection or exception.

3.  Under G. L. 1892, providing that when an executor or administrator is party, other party has right to meet or explain testi-

mony of living witnesses produced against him, in action against estate on implied contract to pay for services rendered deceased, after plaintiff's wife had refreshed her memory from books kept by plaintiff and given dates when he worked on deceased's farm, to meet which defendant introduced testimony of witnesses as to statements of plaintiff before commissioners of estate to effect that he had no books of account against deceased, *held* that plaintiff had right to meet and explain such statements by showing that account books, kept by him solely to show revenue from another employer, incidentally showed services he had performed for deceased, and its exclusion was error.

4. Under G. L. 1892, providing that when an executor or administrator is party other party has right to meet or explain testimony of living witnesses produced against him, in action against estate on implied contract to pay for services rendered deceased, *held* that plaintiff was not confined to mere denial, but might testify to such affirmative facts as had a tendency to meet and destroy such testimony and any legitimate inferences deducible therefrom.

APPEAL from decision of commissioners on claim for services rendered deceased. Plea, general denial. Trial by jury at the March Term, 1926, Rutland County, *Graham,* J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*James P. Leamy* for the plaintiff.

*Lawrence, Stafford & Bloomer* for the defendant.

FISH, J. This is an appeal from the decision of the commissioners of the estate of James E. Powers, deceased. The action was in *quantum meruit* under an implied contract to pay for services rendered. The plea was the general issue. Trial was by jury with verdict and judgment for the defendant. The plaintiff saved two questions for review.

1. The first exception is to the admission of evidence of the payment of $1,000 to the plaintiff from an insurance policy on the life of the deceased. The plaintiff is a nephew of the wife of the deceased, who died September 6, 1924. The deceased

died December 31, 1924. From the time the plaintiff was 10 years of age until he became 21 he made his home with the deceased and his wife. They were farmers living in Middletown Springs. They had a dairy, made maple sugar, and raised annually from 400 to 1,300 bushels of potatoes. After leaving the farm the plaintiff married and had a large family of children, two of the older of whom were girls, who spent their summer vacations in the family of deceased on the farm. The plaintiff resides in Rutland, where he has employment with the Rutland Railroad. After leaving the farm it was his custom to return to it to help plant and dig the potatoes and to do other labor thereon such as sugaring, haying, and doing chores. He also assisted in marketing the potatoes. He made some gifts to the deceased and his wife and received from the deceased each year from 20 to 30 bushels of potatoes and occasionally other products from the farm. He seeks to recover on his claim in this case for all services rendered during the six years preceding the death of the deceased.

To meet the evidence of the plaintiff that the deceased had said that "he would be cared for" and that he would be "taken care of in the proper time," the defendant showed that following the death of the deceased the plaintiff received $1,000 from a life insurance policy on his life. The proof of this was from the testimony of two witnesses. To the testimony of the first witness the plaintiff objected on the grounds that the matter had not been pleaded and that it raised a collateral issue that was immaterial and which would prejudice the jury. To the admission of this testimony the plaintiff saved an exception, but made no objection and saved no exception to the testimony of the second witness whose evidence was substantially the same as the first. It appears from the evidence that the insurance policy in question was at first made payable to either the wife or the estate of the deceased, and that later the beneficiary was changed to Miss Josephine Bethel; that Miss Bethel felt that she was not entitled to the insurance and after the death of the deceased assigned the policy to the plaintiff who was paid the amount thereof by the insurance company.

[1, 2]    The evidence concerning the insurance was clearly inadmissible for the reason that no logical connection appeared between the payment of the policy to the plaintiff and what the deceased said about taking care of him, and its admission

must have been harmful. But the testimony of the first witness, taken under exception, became harmless when the testimony of the second witness to the same fact was received without objection or exception. This results from rule 7 of this Court (now rule 9), which provides that no judgment shall be reversed for the improper admission of evidence, or other error, unless this Court shall believe that the error has injuriously affected the rights of the parties. It cannot be said under the foregoing rule as a matter of law that the testimony excepted to added anything to that afterward received on the subject covered, and therefore on the record presented the exception cannot be sustained. This is in accord with the decisions of this Court. *Duprat* v. *Chesmore*, 94 Vt. 218, 224, 110 Atl. 305; *Wellman* v. *Mead*, 93 Vt. 322, 334, 107 Atl. 396.

[3, 4]   2. The second exception raises the question of the right of the plaintiff to testify under G. L. 1892, which among other things, when an executor or administrator is a party, gives the other party the right to meet or explain the testimony of living witnesses produced against him. The plaintiff's wife was improved as a witness in his behalf, and refreshing her memory from books kept by him showing the days he was employed by the railroad, testified in detail as to the dates that he was working at the Powers farm. To meet this evidence the defendant showed that when the plaintiff was before the commissioners of the Powers' estate, he stated that he had no account, no book account against the deceased. To meet and explain the latter testimony the plaintiff offered himself as a witness and testified that he had an account that showed services rendered (to the railroad), and on being asked if it showed anything else replied that it did. The court excluded the last answer, whereupon the plaintiff offered to show that the account that he had testified to have kept was kept solely to show his revenue from the railroad, but incidentally it showed the services that he had performed for the deceased and was offered to rebut the inference that the jury might take from the defendant's testimony. The court ruled that the plaintiff might tell what he meant by his statement before the commissioners, to which the defendant's witnesses had testified, but further than that the offer was excluded. To this ruling the plaintiff saved an exception. The plaintiff then testified that he meant that he had no specific account against the Powers estate, no itemized ac-

count, but that he had an account that showed his services and services performed that incidentally carried along days that he was there. A motion to strike out the last part of the answer was granted, and the plaintiff reserved an exception.

The plaintiff argues that the logical and reasonable inference from the defendant's testimony was that since the plaintiff told the commissioners that he had no books or itemized account against the deceased, that the books from which Mrs. Burke had testified had been fabricated for the use of the trial. In *Gilfillin* v. *Gilfillin's Estate,* 90 Vt. 94, 101, 96 Atl. 704, this Court held in a case like this that the plaintiff was not confined to a mere denial of the claimed admission testified to, but that it was competent to testify to such affirmative facts as had a tendency to meet and destroy the effect of the witness' testimony. And In re Bugbee's Will, 92 Vt. 175, 181, 102 Atl. 484, it was said that the statute under consideration should be given a construction which inclines toward competency, and that it makes the living party competent to testify not alone to meet and explain the facts testified to by the witness, but also any legitimate inference deducible therefrom. The evidence of the witnesses who were at the commissioners' meeting was that the plaintiff had said that he had no books of account against the deceased. His wife had refreshed her memory from books kept by him and given dates when he was at the Powers farm. It had appeared that the books showed the revenue the plaintiff had received from the railroad and he was asked what they showed in addition to this on the offer that they incidentally showed the services he had performed for the deceased—this to meet the evidence of witnesses who had appeared against him. In limiting the plaintiff to the service rendered the railroad and excluding whatever else his books showed, the court took too narrow a view of the question under consideration. The excluded question led in the direction of the proof of affirmative facts that very likely would have had the effect of meeting and destroying the effect of the witnesses' testimony who were at the meeting of the commissioners. It can readily be seen how the books may have been of service to the wife in fixing the times when the plaintiff was at the farm from the fact that he was not employed or paid by the railroad at the same time. And it was the right of the plaintiff to show what the books contained in order to meet and explain the testimony of the defendant's wit-

nesses that he had no books of account against the deceased. The exclusion of the offered testimony was therefore error.

The defendant says that the exclusion of the unresponsive part of the plaintiff's answer, when asked what he meant by what he said before the commissioners, was not error as the plaintiff did not cover the subject-matter by a proper question. It is unnecessary to pass on this claim, as the question decided adversely to the defendant had already been raised and saved for the consideration of this Court.

*Judgment reversed and cause remanded.*