JOHN LUCAS *v.* W. A. KELLEY.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, and MOULTON, JJ.

Opinion filed October 1, 1929.

*Hubert S. Pierce* and *Raymond L. Miles* for the plaintiff.

*Searles, Graves & Waterman* for the defendant.

POWERS, J.   The defendant owned and operated a sawmill in the town of Derby.   It was equipped with a board-saw, the carriage of which ran on iron trucks set on stringers—one of which stringers ran to the slab-saw rig.   The slab-saw rig consisted of a box-like structure made of plank, about three feet long and two feet wide and two feet high.   It was so arranged that when the slab-saw was not in actual use, it dropped down into this box; and when it was needed, a lever was operated and it came up through a slit in the top of the structure for its work. On the side next to the stringer above referred to, this bench was not boarded up and opposite the position of the slab-saw, there was a hole in the stringer some four inches wide and three inches deep, said to have been made by an oversized saw.

The plaintiff, an employee of one Ansboro, went to this mill to get some lumber for the latter.   He entered the mill through a door at the south end and found the defendant and his son pulling out a stick of timber which they had just "sized" on the board-saw, and was to be used in repairs on the mill.   Seeing that the defendant and his son were having some difficulty in handling this timber, the plaintiff went to their assistance, and pushed on the rear end of the timber so as to work it along on the slab-saw rolls and over the bench.   When he thought the timber had been moved so far that the Kelleys could handle it, he stepped back, and in some way, his left foot went under the slab-saw bench far enough to be caught by the saw, which was then running, and was seriously cut and mangled.   This action for damages followed.   At the trial below, a verdict was ordered

for the defendant. The plaintiff brings the case here on exceptions.

The plaintiff called the defendant as a witness; and in the course of his examination asked him if he had ''any warning sign or anything around that slab-saw where that hole was'' to indicate that it was dangerous. To this question, the defendant answered, ''No.'' Then the defendant's counsel objected and the question was excluded; but the answer was not stricken out, and no request to that end was made. The plaintiff excepted. This exception is briefed by both parties as though the question was unanswered, and it was evidently so treated by the court when the ruling was made. Ordinarily, we should so treat it here, as was done in *Fadden* v. *McKinney*, 87 Vt. 316, 323, 89 Atl. 351. But in the circumstances here presented, we think the answer should be treated as a part of the record. So without discussion, we so treat it, and the exception goes for naught.

The plaintiff improved as a witness Alec Brigham, an experienced millman, who had examined the slab-saw bench, and asked him if in his opinion it was safe. On objection by the defendant, this question was excluded, and the plaintiff excepted. There was no error in this ruling, there was nothing about the conditions existing in or about this saw-bench that could not be made clear to the jury; indeed, photographs made everything plain, and the inference to be drawn from such conditions as to the safety of the place was one which the jurors, exercising their sound judgment, could as well draw as the witness. In such circumstances, opinion evidence is to be rejected. *Houston* v. *Brush*, 66 Vt. 331, 338, 29 Atl. 380.

The facts recited above show that the plaintiff entered the mill for a purpose connected with the defendant's business there carried on, and that the parties had a mutual interest in the subject-matter of his visit. One so entering the premises of another is, in law, an invitee. *Coburn* v. *Swanton*, 95 Vt. 320, 325, 115 Atl. 153. But, ordinarily, his invitation extends only to such part of the premises as are reasonably required for the purposes of his visit. The duty of the owner or occupant toward him to keep safe the premises is restricted accordingly.

It extends only to such parts thereof as have been designated, adapted, and prepared for the accommodation of

such invitees. 20 R. C. L. 67; *Pierce* v. *Whitcomb,* 48 Vt. 127, 127 A. R. 120. The plaintiff's only errand in the mill was to find out where the Ansboro lumber was. A single question would have satisfied his purpose. He had no occasion to go down by the slab-saw bench to ask the defendant about the lumber, but did so as he first testified to ''help the defendant out.'' He was not asked to assist in the defendant's work, but volunteered to do so. There was no emergency calling for his aid, and nothing in the record indicates that the accomplishment of his object in entering the mill depended in any way upon the movement of the timber on which the defendant was working. His going to the assistance of the Kelleys was a departure from the purpose of his entry, and took him to a place where his business did not require him to go. If the plaintiff stands as a mere volunteer, he has no right of action here, for the defendant would not owe him the duty of protection from the misfortune that befell him. One owes no duty— except to prevent wanton or wilful injury—to one who merely volunteers to assist in his service. This is a firmly established doctrine in the law of negligence. This rule, however, is subject to this important qualification: If the party acting has an interest in the work going on, and for his own advantage or that of his employer, undertakes to assist another or his servants, at their request or with their consent, he is not a mere volunteer, but one with an interest; and he is not subject to the disabilities of a volunteer, but is entitled to such protection as proportionate care would afford him. 4 Labatt, § 1564.

The plaintiff insists that his evidence brings him within this exception, which seems to be firmly established both in this country and in England. He cites *Kelly* v. *Tyra,* 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L. R. A. (N. S.) 334; *Welch* v. *Maine Central R. R. Co.,* 86 Me. 552, 30 Atl. 116, 25 L. R. A. 661; *Ryan* v. *O'Brien Boiler Works,* 68 Mo. App. 148; *McConnell* v. *Penn. R. R. Co.,* 223 Pa. 442, 72 Atl. 849; and *Johnson* v. *Clark Motor Co.,* 173 Mich. 277, 139 N. W. 30, 44 L. R. A. (N. S.) 830. In all these cases, the alleged volunteer was acting in a matter in which he or his master had a direct interest. And right here lies the distinction between those cases and the one in hand. The only evidence in the record before us that can be taken to indicate that the plaintiff was acting in behalf and in the interest of Ansboro is his state-

ment that he did what he did with the timber the quicker to secure his boards. He had no interest in the timber or its removal. He participated in an undertaking that did not directly concern him or his master. One so situated must be held to be a mere volunteer. In order to bring one within the exception referred to, he must show that the enterprise which he engaged in was one in which he or his master had a direct and not an incidental or remote interest; and that such interest was substantial rather than trivial. This distinction lies at the foundation of the decided cases. It is well shown by two English cases, *Potter* v. *Faulkner*, 1 Best & S. 800, 101 E. C. L. 800, and *Abraham* v. *Reynolds*, 5 Hurls. & N. 143. In the former case, the defendant's servants were lowering bales of cotton from his warehouse into his cart. The plaintiff, who was waiting with another cart to receive a load of the cotton for his employer, at the request of the defendant's carter, went to his assistance, and was injured by a bale of cotton which fell upon him. It is to be observed that the plaintiff had no direct interest in the work of loading the defendant's cart. A recovery was denied. In the latter case, the plaintiff, the servant of a third person, was assisting in loading cotton into his own cart, and was injured by a falling bale. Here, then, the plaintiff's employer had a direct interest in the work that was going on. It was held that the plaintiff was not precluded of a recovery. Both cases turned on the fellow-servant doctrine, to be sure, but the distinction above referred to was, we think, the controlling factor in each.

This distinction was recognized in *O'Donnell, Admr. of Thomas Welch* v. *Maine Cent. R. R.*, 86 Me. 552; 30 Atl. 116, 25 L. R. A. 658, 660, and in *Wischam* v. *Rickards*, 136 Pa. 109, 10 L. R. A. 97, 20 A. S. R. 900. It was pointed out in the former case that the plaintiff's lack of interest in the work in which he was assisting was the hinge on which the latter case turned, and it was said that if the plaintiff in the latter case had been sent to obtain the wheel that caused the injury and "at their request or with their assent had assisted the defendant's servants in unloading it, in order to hasten or facilitate his own work, and had been injured by their negligence, his right to recover would undoubtedly have been sustained."

The plaintiff here had (at best) only an incidental interest in the removal of the timber being handled. Its prompt

disposition might have had a slight effect upon the time when he could secure the boards he came for. In this respect he stood exactly like the plaintiff in *Potter* v. *Faulkner, supra,* who might have obtained his load a bit sooner if the cart ahead of him was promptly disposed of. But he had no such interest in the work he volunteered to assist in as brought him under the protection of the doctrine he invokes. But it is urged that the defendant knew he was there near the saw-bench pushing on the timber, and that thereupon it became the defendant's duty to give him warning of the dangerous conditions referred to. It may be taken from the record that the defendant knowingly accepted the plaintiff's assistance; but he did no more. But neither knowledge, silence, acquiescence, nor permission, standing alone, amounts to an invitation. *Bottum's Admr.* v. *Hawks,* 84 Vt. 370, 384, 79 Atl. 858, 35 L. R. A. (N. S.) 440, Ann. Cas. 1913A, 1025; *Coburn* v. *Swanton,* 94 Vt. 168, 173, 109 Atl. 854. So the utmost that can be claimed from the defendant's conduct is that the plaintiff thereby became a licensee in that part of the mill where he was injured. As such, his standing, in the respect under consideration, was no better than that of a trespasser. 20 R. C. L. 59. The defendant owed him the duty of active care to protect him from injuries resulting from force negligently brought to bear upon him, but was not bound to keep the premises safe for him, or to warn him of their dangerous condition. *Bottum's Admr.* v. *Hawks, supra; Creeden* v. *Boston & Maine Railroad,* 193 Mass. 280, 79 N. E. 344, 9 Ann. Cas. 1121; *Redigan* v. *Boston, etc., R. Co.,* 155 Mass. 47, 28 N. E. 1133, 14 L. R. A. 276, 31 A. S. R. 520; *Bustillos* v. *Southwestern Portland Cement Co.* (Tex. Com. App.), 211 S. W. 929. This rule of law is sometimes stated in this way: The freedom from liability of the owner to a licensee exists only when the negligence of the former is passive—the negligence of omission. If the owner is affirmatively and actively negligent, he will be liable for injuries thereby occasioned to the latter. *Brigman* v. *Fisk-Carter Constr. Co.,* 192 N. C. 791, 136 S. E. 125, 49 A. L. R. 773. The case before us does not require us to consider what acts or omissions are to be regarded as "passive" within the scope of the rule as thus stated.

As the evidence disclosed no duty owed this plaintiff by the defendant, the non-performance of which resulted in the injuries suffered by the former, the verdict was properly ordered.

*Affirmed.*