RALPH T. SHASTANY *v.* HENRY R. WEEKS.

May Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 5, 1943.

*Witters & Longmoore* for the defendant.

*Arthur L. Graves* and *R. Lawlor Cooper* for the plaintiff.

JEFFORDS, J. This is an action for the alienation of the affections of the plaintiff's wife. The declaration contains three counts. The first charges alienation by criminal conversation and the other two base the charge on enticement and persuasion. The case was submitted to the jury on all three counts with a verdict and judgment resulting for the plaintiff. The case is here on defendant's exceptions.

From the evidence in the case the jury might reasonably have found the following facts: On January 1, 1940, the plaintiff and

his wife had been married several years. They had a daughter about fifteen years old and a son a few years younger. Their married life had not been entirely a happy one as the wife had a few years previous to this time started divorce proceedings which, however, had been abandoned. At the date mentioned the plaintiff was a patient in the veteran's hospital at White River Junction. During the spring and early summer of that year Mrs. Shastany visited her husband at the hospital several times and wrote him many letters which indicated her affection and esteem for him.

In July of that year the defendant, a married man living apart from his wife and children, met Mrs. Shastany. He invited her to ride from St. Johnsbury to Island Pond. On the trip he learned that she was a married woman. The defendant at the time was occupying a cottage at Harvey's Pond. A few days after the meeting the defendant came to board and room with Mrs. Shastany in her three room apartment. He occupied one bed room and she and the two children the other. During this summer Mrs. Shastany and the children visited the camp several times. The cottage at the camp was quite small and had only drapes across the door openings. During the summer of 1941 Mrs. Shastany and her children spent much time at this camp and she and the defendant went in bathing together quite frequently.

In September of 1940 the plaintiff returned to St. Johnsbury from the hospital. Some time before this the defendant had learned from a letter which he had read that the plaintiff did not like to have the defendant stay as a boarder in Mrs. Shastany's apartment but though realizing that this situation might lead to trouble he continued it. On a Sunday morning shortly after his return, the plaintiff went to his wife's apartment to get his mechanic's tools. Mrs. Shastany who admitted him had on a kimona. While he was visiting with the children the defendant came into the room having on a bathrobe and slippers. Mr. Shastany asked his wife if she would be willing to live with him and leave the defendant alone. She replied that she was all right as she was and was all through with the plaintiff. Weeks said that Shastany had better get out and Mrs. Shastany stated that she could handle the matter. The plaintiff got his tools and left and has not lived with Mrs. Shastany since that time. She obtained a divorce in 1942.

In November of 1940 Mrs. Shastany and her children moved to

a larger apartment. The defendant went with her and in addition to paying for his board he hired her to keep his books and stored slot machines which he owned in one or more of the rooms. This arrangement continued until September 1941 when Mrs. Shastany and the defendant had some trouble. As a result Mrs. Shastany went to stay with a relative in Massachusetts and the defendant left St. Johnsbury for a short time and then came back and rented a room on Railroad Street. In the latter part of October the defendant went to Boston and on his way back stopped at the place where Mrs. Shastany was staying and brought her back to St. Johnsbury. She then rented an apartment on Caledonia Street and Weeks moved in as a boarder. This arrangement continued until September 1942 when Mrs. Shastany moved to the Proia block in St. Johnsbury where she was residing at the time of the trial. Weeks took a room elsewhere but continued to eat some of his meals at Mrs. Shastany's. The defendant on occasions paid the rent for one or more of the apartments and referred to one of them as "his apartment".

From the evidence it also appeared that the defendant during the time he was living in Mrs. Shastany's apartment gave her two Christmas presents. The first was a fur coat for which he paid $80.00 and the second a watch valued at $35.00. It was shown that the defendant on several occasions took Mrs. Shastany to dances, to the moving pictures and on rides in his car. At times they had violent quarrels. In May of 1942 the defendant while intoxicated tried to choke Mrs. Shastany and the police were called. In September of that year they quarrelled and the defendant at about ten o'clock at night chased Mrs. Shastany out of the apartment where they were living when she was wearing only a house coat and bed room slippers. After these quarrels Weeks continued on as a "boarder". On one occasion when Mrs. Shastany and Weeks were together the plaintiff asked his wife if he could take their son fishing. She said he could if he did not take the boy to his uncle's home. Shastany replied that his uncle's people "were just as respectable as the man that she was living with". Weeks then told Shastany that he (Weeks) was just as decent as anybody and struck the plaintiff.

Mrs. Gladys Barton testified to the effect that from the early spring of 1940 until late December 1942 she did defendant's washing

and laundry. During the time that Weeks stayed with Mrs. Shastany the washing of the latter was included with defendant's. During this period, every two or three weeks, the witness would notice spots on the bed sheets, towels and men's shorts "that might have been made by a man and woman together." The defendant testified to the effect that at infrequent intervals men's clothing other than his was included in the washing.

The defendant moved that the first count in the declaration charging criminal conversation be stricken out. The ground of the motion was that although there was evidence in the case of the opportunity to commit adultery there was none showing an adulterous disposition. This motion was denied and the exception to the denial is the first which we will consider.

■ Adultery may be proved by circumstantial evidence both in civil and criminal cases. When an adulterous disposition by both parties has been proved to exist and an opportunity has been shown to commit the act, adultery may be inferred. *Taft* v. *Taft,* 80 Vt 256, 67 A 703; *State* v. *Brink,* 68 Vt 659, 665, 35 A 492; *State* v. *Kimball,* 74 Vt 223, 229, 52 A 430.

■ Probably no one of the various facts above set forth would have been sufficient to warrant a jury in finding an adulterous disposition between Mrs. Shastany and the defendant. In our opinion, however, taken as a whole, with the reasonable inferences to be drawn therefrom, they do constitute evidence of such quality and character as to justify a jury, acting reasonably, to find that such a disposition did exist between the parties and that they committed adultery. Thus the required test was satisfied. *State* v. *Boudreau,* 111 Vt 351, 361, 16 A2d 262; *Perkins* v. *Vt. Hydro-Electric Corp.,* 106 Vt 367, 399, 177 A 631. See also *Murphy* v. *Murphy,* 244 Mass 110, 138 NE 566.

The defendant says that the testimony of witness Barton upon which the plaintiff lays much stress should be disregarded as it amounts to mere conjecture, surmise or suspicion as to the nature of the spots she saw on the various articles. But any question in this respect was removed by counsel for the defendant in cross examination of this witness as he assumed by his questions that the testimony of this witness had been to the effect that the spots were seminal stains. This is shown by the following questions and answers:

"Q. Did you make a practice of looking over all the clothing that came there for seminal stains?

A. I did. Yes I did.

Q. Did you see any on any other clothing except that which Weeks brought?

A. I did."

There was no error in the denial of the court of the motion to strike out the first count in the declaration. This holding disposes of the exceptions to the charge based on this count and it applies to certain grounds, having the same basis, in the motion to set aside the verdict. The grounds for this latter motion which were addressed to the discretion of the court are not briefed and consequently are not considered. No error has been made to appear in the charge of the court nor in its denial of the motion to set aside the verdict.

The defendant excepted to the failure of the court to charge, "That the plaintiff's criminal connection with other women at any time after his marriage and before Mrs. Shastany's divorce became absolute, if you find such criminal connection, should be taken into consideration on the question of damages."

Neither the testimony referred to by the defendant in support of this exception, nor any found in our reading of the transcript, constituted evidence of the required quality to warrant the charge in question. No error has been made to appear in this respect.

The defendant has briefed three exceptions to the rulings of the court in the admission or exclusion of evidence. The first of these exceptions relates to the exclusion of testimony of witness Ford offered as impeachment of witness Clark. The latter had testified that she knew both Mrs. Shastany and Weeks by "eyesight". The defendant offered to show that Mrs. Clark had inquired of Mrs. Ford in the court room whether these persons were present. This offer was excluded. There was no error in the ruling as it does not appear that either Mrs. Shastany or the defendant were in the court room at the time of the claimed conversation, or, if present, were in a position to be seen by Mrs. Clark.

The next exception relates to a question asked witness Virginia Shastany. The question was answered before objection by counsel for the plaintiff. The objection was sustained but the answer was not stricken from the record. The defendant obtained all the

benefit to which he was entitled from the question which had slight if any bearing on any material issue in the case. No error appears.

The remaining exception presents a more serious question. During the cross examination of the defendant the following occurred. We quote fully from the transcript.

"Q. Your wife Lileen instituted proceedings against you in March, 1940, didn't she as you remember it, or about that time?

A. Yes that is correct.

Q. And you haven't lived with her since?

A. No, that is correct.

Q. And up until she brought an injunction you used to take your women right into her apartment where your wife was living, didn't you?

Mr. Witters: Object to that, entirely immaterial.

The Court: Take the answer, as cross examination.

Mr. Witters: Allow us an exception Your Honor.

The Court: Yes.

A. The only occasion Mr. Graves, was I took one woman in there but I wouldn't say she was my woman. I took a woman one time into the apartment.

Q. Several times? A. One time.

Q. And your wife got an injunction against your doing anything more of that sort didn't she?

Mr. Witters: We object to that unless it appears that it was Mrs. Shastany.

Mr. Graves—Withdraw the question.

Q. You say there was only one occasion that you took another woman into your wife's apartment in the Reed block?

A. One occasion.

Mr. Witters: Object to that.

The Court: I will take the answer as cross examination.

Mr. Witters: Unless it appears that it was Mrs. Shastany.

The Court: Well we will take it.

A. One occasion. Mrs. McKee was the name.

Q. You say she was only up there once? A. That is correct.

Q. How long did she stay?

Court: I think you have gone far enough now.

Mr. Graves: Very well Your Honor.

■ Our inquiry as to whether error was here committed must be confined to the question excepted to as, construing the record against the excepting party, it does not affirmatively appear that this exception was intended, and understood by the trial court, to cover the subsequent testimony. It is true that this latter testimony was objected to but under our holdings merely to state an objection, without taking an exception, is not enough. *Stoddard* v. *North Troy,* 102 Vt 462, 467, 150 A 148; *Slayton* v. *Drown,* 93 Vt 290, 296, 107 A 307; *Newton* v. *Am. Car Sprinkler Co.,* 88 Vt 487, 494, 92 A 831; *Townshend* v. *Townshend,* 84 Vt 315, 317, 79 A 388.

■ Assuming there was error in the admission of the evidence received over the objection and exception of the defendant such was rendered harmless by the receipt of the subsequent testimony which was similar to that in issue, all of the questions and answers above quoted being of the same tenor. *Ellison* v. *Colby,* 110 Vt 431, 437, 8 A2d 637; *Stoddard* v. *North Troy, supra; State* v. *Orlandi,* 106 Vt 165, 173, 170 A 908; *State* v. *Fairbanks,* 102 Vt 283, 292, 147 A 682; *Woodhouse* v. *Woodhouse,* 99 Vt 91, 124, 130 A 758; *Miles* v. *Vt. Fruit Co.,* 98 Vt 1, 14, 124 A 559; *Murray* v. *Nelson,* 97 Vt 101, 108, 122 A 519. It is apparent that the principle underlying the rule is that if there is other evidence in the case for consideration by the jury similar to that which was excepted to, no harm can be said to result even though there was error in the admission of the evidence received under exception.

It is to be noted that in all of the cases just above cited and in many others which could be referred to it is stated that the similar evidence which rendered the error harmless was received "without objection" or "without objection or exception". In each instance that was the fact of the matter so there was no occasion to determine whether, as here, a mere objection to the similar testimony would affect the rule. In our opinion it would not. As before

noted, the objection without saving an exception, was not sufficient to raise the question of error in the admission of the subsequent testimony. Consequently this testimony, whether properly so or not, remained in the case for consideration by the jury with the same status as though no objection had been made to its admission.

*Judgment affirmed.*