STATE *v.* MILO PERSONS.

February Term, 1946.

Present: MOULTON, C. J., SHERBURNE, BUTTLES and STURTEVANT, JJ., and CLEARY, Supr. J.

Opinion filed May 7, 1946.

436

*Raymond L. Miles* for the respondent.

*Clifton L. Drew,* State's Attorney, for the State.

BUTTLES, J. This is a criminal prosecution tried in Caledonia Municipal Court under an information which charges that the respondent on March 1, 1945, "did unnecessarily fail to provide (certain described cattle) with proper food and drink," in the language of one part of P. L. 8500. The respondent was convicted and the case is here on his exceptions.

Before the jury was sworn the respondent moved to quash the information on the ground that it did not inform the respondent of the character and nature of the offense charged so as to enable him adequately to prepare his defense, and also that the part of the statute which is the basis of the information is so uncertain and indefinite that the respondent is deprived of due process of law.

His brief raises the question of the sufficiency of the information under the common law and under Chap. 1, Art. 10 of the Vermont constitution. It is sufficient to charge a statutory offense in the words of the Act if every fact necessary to constitute the offense is charged or necessarily implied by following such language. But if, from the nature of the offense, the words of the statute do not clearly and definitely apprise the respondent of the offense charged against him greater particularity must be used. The complaint or information must set forth the charge with such particularity as will reasonably indicate the offense of which the respondent is accused, and enable him intelligently to plead the judgment if subsequently prosecuted for the same offense. *State* v. *Wersebe*, 107 Vt 529, 532, 181 A 299; *State* v. *Van Ness*, 109 Vt 392, 399, 199 A 759; *State* v. *Gosselin*, 110 Vt 361, 365, 6 A2d 14.

An information may be defective under the common law

and under the state constitution because it fails to specify which definite offense is charged when there are several such offenses to which the words used may apply. State v. Van Ness, 109 Vt 392, 400, 199 A 759; State v. Villa, 92 Vt 121, 123, 102 A 935. So, too, when it is not the act itself but the manner in which it is done that makes it criminal, the manner becomes a constituent part of the offense and must be set forth. State v. Aaron, 90 Vt 183, 185, 97 A 659.

■ P. L. 8500 penalizes cruelty to animals when inflicted in various ways, but only one such way is specified in the information in this case, viz., unnecessarily failing to provide the animals with proper food and drink. The words "unnecessarily" and "proper" are to be understood in their ordinary sense, and as here used can only mean that while the respondent could have provided such food and drink he failed to do so. We construe "proper" to be such food and drink as are required to preserve the health of the animals. To say that the amount of food and water to be given them, or the times at which they must be fed and watered should be stated in the information would be to insist on that unreasonable particularity which the rule does not require. From what has been said it is apparent that the portion of P. L. 8500 upon which the information is based is not so uncertain and indefinite as to support the respondent's objection that he is deprived of due process of law. The motion to quash was properly denied.

■ Russell A. Wheelock, a State's witness, being asked whether the cattle in question appeared strong answered, subject to the respondent's exception: "Being where I have seen other cattle at my own home I would say no." The respondent then moved that the answer be stricken out as not responsive, and excepted to the denial of the motion. The witness had testified that on March first he went into respondent's stable and saw some of the cattle as they were driven in; that he had an opportunity to observe their walk as they came from one stable to the other and they walked in a halting manner. As a general rule witnesses are to state facts and not give their inferences or opinions; but this rule is subject to the exception that where the facts are of such a character as to be incapable of being presented with their proper force to anyone but the observer himself, so as to enable the trier to draw a correct or intelligent conclusion from them without the aid of the judgment or opinion

of the witness who had the benefit of personal observation, he is allowed, to a certain extent, to add his conclusion, judgment or opinion. *Johnson* v. *Cone*, 112 Vt 459, 465, 28 A2d 384 and cases cited.

This rule has been applied to a wide variety of subjects including age, size, distance, mental and physical appearance, weight, identity and duration of time. *Fowlie's Admx.* v. *McDonald, Cutler & Co.*, 82 Vt 230, 237, 72 A 989. In *State* v. *Ward*, 61 Vt 153, 181, 17 A 483, it was held applicable, under the circumstances, to testimony that a horse seemed tired. In the present case the foundation laid by preliminary examination of the witness was clearly as extensive as the situation permitted and the objection was properly overruled. The first part of the answer was not responsive and might better have been stricken out on motion. But this is a matter to a large extent in the hands of the trial court to be dealt with as justice may require. *Berkley* v. *Burlington Cadillac Co.*, 99 Vt 227, 232, 131 A 16; *Symes* v. *Fletcher*, 95 Vt 431, 438, 115 A 502. The witness was not a party and the statement did not, as in *Gero* v. *John Hancock L. Ins. Co.*, 111 Vt 462, 472-3, 18 A2d 154, violate the hearsay or other rule of evidence.

The witness Parker testified subject to the respondent's exception, as to the condition of the cattle on January 13, 1945. The exception was on the ground that this was too remote from March 1, 1945, the date as of which the offense was charged. This court has often held that the question of remoteness is generally within the discretion of the trial court. *McAllister* v. *Benjamin*, 96 Vt 475, 493, 121 A 263; *Waterman* v. *Moody*, 92 Vt 218, 235, 103 A 325; *Johnson* v. *Doubleday*, 92 Vt 267, 269-270, 102 A 1038; *Long* v. *Leonard*, 113 Vt 258, 261, 32 A2d 679. If the condition of the cattle on March first was due to lack of proper food the underfeeding must then have continued for some time, and evidence of their condition on January 13th was not, as a matter of law, too remote.

On direct examination of Dr. Harris, a respondent's witness, he was asked: "Is there anything extraordinary about a farmer's failure to call a veterinary?" The question was excluded and an offer made to show that there is nothing extraordinary about such failure. The real issue in the case was whether the poor condition of the cows on March 1st was due to failure to feed them properly or to bloody dysentery. The question as asked was not limited to calling a veterinary for this disease, nor was it confined to the practice

of this respondent. It was irrelevant and was properly excluded.

The respondent was asked on cross examination why he didn't go to a veterinary when his cows started coming down with this bloody dysentery and he was permitted to answer subject to exception. This was clearly competent cross examination of a party. It was a specific and not a general question. It tended to show that the cows were not suffering from bloody dysentery and to impeach the respondent. *Bagley* v. *Mason,* 69 Vt 175, 179, 37 A 287.

The respondent relies upon an exception to the denial of his motion for a directed verdict upon the ground, in substance, that there was no evidence in the case from which the jury could find the respondent guilty. In considering this question we must view the evidence in the light most favorable for the State. *State* v. *Greaves,* 112 Vt 222, 224, 22 A2d 497; *Shields* v. *Vt. Mut. Fire Ins. Co.,* 102 Vt 224, 237, 147 A 352; *Farren* v. *McMahon,* 110 Vt 55, 57, 1 A2d 726.

So considered the jury could reasonably find that the cattle were kept in two stables; that for them to get into the upper stable cattle had to pass through the lower stable and through a small room, the floor of which was ten inches to two feet lower than the floors of the two stables; that on March first as they came from one stable to the other they walked in a halting manner and did not appear strong; that the manure near the cows was hard and dry; that a witness saw no hay in front of the cows; that on that occasion the back bone of one cow was just the bone with the hide over it, the hip bones stuck right out and she was very thin; that two of the cattle slipped and "kind of went on their knees" in going from one stable to the other; that on January 13th a witness familiar with bloody dysentery saw no sign of the disease as a result of an inspection lasting an hour and a half or two hours; that the manure on that occasion was very hard and black and dry and the cattle were pitifully poor. The respondent testified and the State conceded that there was plenty of hay in the barn.

It is common knowledge that lack of proper food will cause animals to lose flesh and strength. There was sufficient circumstantial evidence to warrant the jury in inferring that the condition of the cattle on March 1st was caused by the fact that they were not receiving proper food. There was no error in the denial of the motion.

*Exceptions overruled and judgment affirmed.*