**Harold Jaqueth v. Guilford School District et al**

[189 A.2d 558]

November Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 6, 1963

*Edward A. John* for the plaintiff.

*Gannett, Oakes & Weber* for the defendant.

**Barney, J.** The defendant school district terminated at the end of the second year a three-year contract with the plaintiff to transport school pupils. The plaintiff brought suit for the loss of his expected return on the remaining year's life of the contract. His claim was that the defendant had no right or cause to put an end to the contract ahead of its term. The jury returned a verdict for the defendant and the plaintiff appealed.

The errors he complains of all relate to evidence that the plaintiff says was improperly admitted. To avoid putting a premium on trivial error and to limit retrials, as far as possible, to situations marked by a failure of justice, this Court requires an appellant to do more than establish error. As complaining party, this plaintiff must demonstrate that the error was prejudicial and injuriously affected his rights. *Towle* v. *St. Albans Publishing Co.,* 122 Vt. 134, 139, 165 A.2d 363.

The fact that the parties had entered a contract was recognized in writing only in the form of the following notation in the minutes of the district school board:

> "Motion made by H. Cutting and supported by R. Gaines to give Harold Jaqueth a contract for three (3) years at a price of $34.50 a day; and by so doing broke his present contract. So voted."

To supplement this, the defendant put in evidence, over plaintiff's objection, two manuals relating to school bus driving promulgated by the Department of Education. These were received as part of the parties' understanding as to the terms of the contract. The plaintiff's position is that, since the manuals were not incorporated into the school board memorandum of the contract, they cannot either expressly or impliedly be considered as conditions of the contract by which plaintiff was bound.

However, the plaintiff himself testified that he understood that these manuals formed part of the rules and regulations he was supposed to follow as a school bus operator. His testimony also developed that he attended yearly training sessions, prior to and during

the life of this contract, held by the State for school bus drivers. The manuals in evidence were used in connection with these training sessions.

 Although a memorandum was made in writing evidencing the agreement, the contract was in essence an oral one. There was no joint writing spelling out terms and conditions. Many of the terms were left to implication. For example, the State requires certain safety equipment to be carried on school busses, and requires that the vehicle conform to certain mechanical minimums. It is implicit in the agreement between the plaintiff and the defendant that the plaintiff's vehicles must meet State standards. That is to say, the State's regulations in this respect were enforceable not only directly by the State, but by the defendant on its own behalf as a part of the contract. This is likewise true of the State's regulations concerning the duties of school bus operators. The plaintiff recognizes this when, on direct examination as part of his own case, he introduced the subject of his own familiarity with these regulations. If there was any uncertainty about the relevance and materiality of these manuals standing alone, which we doubt, certainly plaintiff's testimony obviated it.

The next matter briefed deals with what the plaintiff characterizes as instances of witnesses improperly testifying as to their opinions, inferences and conclusions.

The first of these deals with a comment by a witness that he thought maybe the plaintiff was "a little emotional anyway." This response came to a question inquiring what the witness meant when he described the plaintiff as upset about news of his discharge. The plaintiff asked that the response by stricken, which was denied.

 He urges in this Court that evidence as to another's mental state cannot be received except by administrative necessity, which does not appear here. Laying aside the question of prejudice to the plaintiff's case, this evidence partook more of the nature of a shorthand description of the appearance or impression conveyed to the witness by the plaintiff's actions and physical demeanor. Where the impact of the physical facts cannot convey with fidelity the impression they created at the time in the observer, he may be allowed to add his own conclusion, judgment or opinion. This is the rule in

*State* v. *Persons,* 114 Vt. 435, 438, 46 A.2d 854, and it leaves a large discretion in the trial court with respect to the striking of such testimony. We are not disposed to tamper with the judgment of the trier of fact here.

Something very like the same situation occurred when another witness, in her testimony, replied to a question which, in effect, asked if the return of the school bus sooner than the customary time on the occasions she had mentioned gave her concern.

Her answer was unresponsive, since the question called merely for an affirmative or negative expression. She said, "I felt probably he was driving faster than common." The plaintiff then objected to the question, to which the court replied, "We will take the answer. You may have an exception." The objection following the answer was not accompanied by a motion to strike out the answer, so called for no ruling as to the question. *Fadden* v. *McKinney,* 87 Vt. 316, 325, 89 Atl. 351. The answer remains in the record unchallenged. *Lucas* v. *Kelley,* 102 Vt. 173, 176, 147 Atl. 281.

But, taking into account the possibility that the trial court's expressed intention to let the answer stand may have led the plaintiff to fail to make the required motion to strike, we will reach the point the plaintiff has briefed.

The evidence reveals that the witness was a teacher who, in rotation with other teachers, had the duty to supervise the release of the children from school for the purpose of boarding the busses. These busses made two trips, and, by understanding with the plaintiff, were free to leave six minutes after loading time started. The busses had the same routes each day. The duty teachers were therefore conscious of the time interval between the first departure and the return for the second trip. It was to the return of the bus in this context that the witness' testimony related.

The plaintiff's claim of prejudice in the admission of this testimony is compromised by the fact that another witness, also a duty teacher, had already testified to the same effect without opposition. The testimony that came in without objection was that the bus ordinarily returned in thirty-five minutes, but if the plaintiff was upset, the interval decreased to twenty minutes. This teacher testified that she observed that when he made these quick trips, the plaintiff's manner of driving when he left the school grounds and returned

was rather fast, faster than his normal driving. She said she felt the children were not safe.

Going back to the witness whose testimony is the subject of the objection argued here, we find her evidence to be of the same tendency. She had already testified that she had noticed, on more than one occasion, that the plaintiff returned for the second load of children in a much shorter time on days he was observed to be irritable than on normal days. In view of the evidence already in the case, and taking into account the fact that the basis for the witness' conclusion had been testified to, no error can be predicated on her stating that conclusion in this case. *State* v. *Persons, supra,* 114 Vt. 435, 438, 46 A.2d 854.

Near the end of the case John Kristensen, a member of the school board concerned, was on the stand. He was asked by the defendant his reasons for moving to terminate the services of the plaintiff. At that point there was an objection on behalf of the plaintiff, "I don't think reasons are proper. I think the witness may testify to things he may have observed." The question was allowed. The plaintiff now argues that the answer was prejudicial, containing hearsay and opinion.

Here, too, the plaintiff failed to indicate to the court below that he found any fault with the content of the answer, and made no motion to strike any of it. The question itself was not objectionable since it bore on the relevant and material issue of the good faith of the defendant's director in bringing about the termination of the contract.

Again passing the failure of the plaintiff to directly challenge the answer, we find no substance in the objection he raises here. The witness acknowledged that his action was based on hearsay, since he could not possibly have arranged to personally observe all the questioned conduct of the plaintiff. The jury was aware of the second-hand nature of the information forming the basis of the witness' action. This jury awareness, of itself, does not support its admission, but there is authority for receiving such testimony in proper circumstances. See 6 Wigmore, Evidence, §1789 (3d. Ed. 1940). In this case, however, as the plaintiff concedes, all of the episodes referred to in the witness' testimony were already before the jury from the lips of direct participants. Evidence in support of all of them was in the case without objection, and no error can be

claimed here for this answer. *Burke* v. *Power's Estate,* 100 Vt. 342, 344-5, 137 Atl. 202; *State* v. *Tatko,* 119 Vt. 459, 465, 128 A.2d 663.

The last claim of error advanced by the plaintiff deals with what he describes as two situations where. evidence was admitted in violation of the prohibition against hearsay. In the first, the witness, the superintendent of schools for the area, testified to an episode that took place in his office. His secretary, in his presence, answered the telephone and hung up very abruptly. The witness then went on to relate the conversation he had with her:

Q. And can you tell what happened on that occasion?

A. Well, my secretary took the call and hung up very abruptly. I said, "What's that about?" She said, "That's Mr. Jaquith . . ."

Mr. John: Object to what the secretary told him. This violates the hearsay rule.

Court: Go ahead.

Mr. John: How can we cross-examine?

Court: Go ahead.

A. The secretary said, "That's that Mr. Jaquith. When I asked 'who is calling, please,' he said, 'None of your God Damned business' and I hung up." I believe he called me back.

The defendant's position is that this conversation was admissible under the hearsay exception described in 6 Wigmore, Evidence, §1750 (3d ed. 1940) as the "spontaneous exclamation" exception. It is there recommended that the application of this principle be left to the trial court entirely. Certainly, whether discretion in the trial court is allowable or not, this utterance by the secretary had the characteristics of spontaneity, the presence of a startling event, lack of time to contrive and reference to that startling event, all tending to justify application of this exception. As was said in *Ross* v. *Bank of Burlington,* 1 Aik. 43, 52, and again in *Hill* v. *North,* 34 Vt. 604, 616, it is impossible to suppose that the speaker could have had it in mind then to be making evidence to aid in a controversy with anyone. Nor does the prejudice plaintiff claims for it appear. It was not evidence of the plaintiff's behavior while at the school or on the bus in the presence of children. It may have suffered from the weakness of immateriality, but prejudice is not demonstrated.

■ The other circumstance complained of under this claim of error also relates to a phone call. In this instance both parties to the call were witnesses, and each testified to the conversation. The plaintiff objected only to the first, allowing the other testimony to come in unopposed. Moreover, the plaintiff had already, as part of his case, introduced this same subject-matter. He cannot now claim error for its admission from another witness. *Shastany* v. *Weeks,* 113 Vt. 363, 369, 34 A.2d 174.

*Judgment affirmed.*

**Shangraw, J.,** dissenting. I would reverse. This conclusion is based upon the testimony of Floyd Rising, Superintendent of Schools of Windham South District, which was objected to by the plaintiff as hearsay evidence.

Mr. Rising testified about a telephone conversation had between his secretary and the plaintiff, Mr. Jaqueth. This is quoted in the majority opinion and in part reads: "The secretary said, 'That's that Mr. Jaquith. When I asked 'who is calling, please,' he said, 'none of your God damned business' and I hung up. I believe he called back."

This brings into play the nature of the test required by the hearsay rule. Wigmore on Evidence, Third Edition, Vol. 5, §1362 at page 3 states:

"The fundamental test, shown by experience to be invaluable, is the test of Cross-examination. The rule, to be sure, calls for two elements, Cross-examination proper, and Confrontation; but the former is the essential and indispensable feature, the latter is only subordinate and dispensable (post section 1395) . . . The theory of the Hearsay rule is that many possible deficiencies, suppressions, sources of error, and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of Cross-examination."

The secretary was not called as a witness. While there are exceptions to the general hearsay rule, the circumstances present in this case do not afford such an exception. I believe the requisite spontaneity is lacking. In my opinion the testimony of Mr. Rising on the point in issue was clearly hearsay, and its admission error.

Moreover, the substance of the telephone conversation, and more particularly the reference to the Diety, a violation of the biblical admonition, "Thou shalt not take the name of the Lord thy God in vain" is so patently offensive as to leave little doubt of its prejudicial effect. The admission of this conversation in evidence very likely poisoned the minds of the jury. It was not relevant to any issue in the case, or proof of any pertinent fact. It is my judgment, that by its presence in the case, the adverse effect upon the jury was so compelling as to constitute prejudicial error.