**Edward TUCK, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 81–827.

District of Columbia Court of Appeals.

Argued Jan. 5, 1983.

Decided Oct. 5, 1983.

---

Charles W. Halleck, Washington, D.C., for appellant.

David E. Sellinger, Asst. U.S. Atty., Washington, D.C., with whom Stanley S.

Harris, U.S. Atty., Michael W. Farrell and Christopher A. Myers, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant, Edward Tuck, of cruelty to animals, namely puppies in his pet store. D.C.Code § 22–801 (1981). The trial court sentenced him to one year's imprisonment but suspended execution of the sentence, imposed two years of supervised probation, and fined him $250. Appellant argues that the trial court erred in denying his motion to suppress evidence, since the search warrant for the Humane Society's seizure of the puppies was based on a provision of the cruelty to animals statute that the motions judge declared unconstitutional. Alternatively, appellant contends we must reverse his conviction, as a matter of due process, because the statutory definition of cruelty is "so vague, broad and non-specific that citizens must guess at its meaning."

We disagree with both contentions. Under the circumstances here, whether the Humane Society's application for the search warrant alleged facts giving probable cause to seize the puppies under a valid provision of the statute, or only under an invalid provision as appellant alleges, the seizure was lawful. The trial court, therefore, did not err in denying appellant's suppression motion. We also conclude that the provision of the statute under which appellant was convicted—a provision unaffected by the motions judge's ruling—is constitutionally valid, both on its face and as applied to appellant. We affirm the conviction.

I.

Appellant is the proprietor of a pet store, Animal T.V. Trainers, located at 704 7th Street, N.W. Eleanor White, a Cruelty Investigator for the Washington Humane Society, and Donna Kessler, an employee of the District of Columbia Animal Control, visited appellant's store on November 3, 1979 in response to a citizen's complaint to the Humane Society. White testified at trial that she had observed approximately 20 puppies in the store, that the puppies' cages were rusted and encrusted with hair and fecal matter, that the water bottles in at least two of the cages were empty, and that many of the puppies were underweight, with protruding hips and ribs. Kessler corroborated White's description of the cages' and the puppies' conditions. She noticed a mixed shepherd puppy, which she described as "very thin," in a cage with an empty water dish. She bought the puppy and brought it to the District of Columbia Animal Control, where her supervisor instructed her to take the puppy to a veterinarian. Dr. Frederick Adams, the veterinarian who examined the puppy, testified that it "was basically emaciated, thin, he was weighing three and a half pounds as opposed to an expected weight of eight to ten pounds."

Based on her own observations and on Dr. Adams' report and the report of another veterinarian who observed the puppy on November 3, Eleanor White applied for and received a search warrant for appellant's shop. D.C.Code § 22–805 (1981). Two days later, the Humane Society executed the warrant and seized 15 puppies. At trial, White testified that three of them "were tired ... they couldn't stand for very long." A doberman pinscher puppy was "severely underweight," another puppy had "very prominent" hips and ribs, and an underweight mixed shepherd "would drop back to the ground" when she tried to get it to stand. White further testified that several of the seized puppies were in cages without water.

Two veterinarians had examined the puppies, Dr. Frederick Adams and Dr. Earl Strimple. Dr. Adams testified that the puppies "were all markedly dehydrated. Most appeared underweight, thin, scruffy hair coat. They were basically in poor condition .... They were ravenous ...."

[T]hey gave them some food and they just tore it up, food and water." Dr. Strimple testified that 13 of the 15 puppies were moderately to severely dehydrated. He then gave a detailed description of the medical condition of each. Dr. Strimple examined 14 of the puppies again in December (the other had died on November 8) and observed that most of them had doubled their weight in the five or six weeks since their initial examination.

Appellant testified, in defense, that he had been operating his shop for approximately 22 years, that all the puppies had received water on the day they were seized, that he checked "many times a day" to make certain the water bottles were functioning properly, and that it was the shop's policy "to feed the dogs all that they will eat." He disputed the prosecution witnesses' accounts of the puppies' weakened and lethargic conditions. "We have heard so much bull from the do-gooders, the do-good societies, that say I called him and he didn't come, and so he is a listless dog, this is asinine."

## II.

The government initially charged appellant with two violations of D.C.Code § 22–801 (1981) [1]: inflicting (1) "unnecessary cruelty" on puppies in his custody, and (2) "unnecessarily fail[ing] to provide" the puppies "with proper food, drink, shelter, or protection from the weather." Judge Hannon, acting as motions judge, declared that the provision of the statute prohibiting "unnecessary cruelty" was unconstitutionally

vague. Judge Hannon further concluded, however, that the provision dealing with unnecessary failure to provide food, drink, and shelter was not vague. Accordingly, he denied appellant's motion to dismiss.[2]

Appellant argues that the warrant authorized only a search under the "unnecessary cruelty" provision Judge Hannon ruled unconstitutional, and thus he should have suppressed all evidence seized pursuant to that warrant. We note, first, our disagreement with appellant's characterization of the warrant. It authorized the Humane Society to seize "sick dogs." Ms. White's affidavit in support of her application for the warrant stated that she had observed puppies in the shop that were "extremely lethargic, underweight, dull-coated and generally listless," that the puppy Ms. Kessler had purchased appeared "stunted, underweight, dull-coated and lethargic," and that two veterinarians had reported to her that the puppy was "seriously underweight." This affidavit accordingly recited facts giving probable cause for a warrant supporting the government's effort to prove (in the words of the trial court) "that these dogs were sick as a result of their not being given proper food, drink, shelter, and protection from the weather." Judge Hannon's narrowing of the statute did not affect a warrant that expressly permitted the seizure of evidence for purposes of prosecution under the provision of the statute Judge Hannon held constitutional.

In any event, even if the warrant had only supported a seizure of evidence for

1. D.C.Code § 22–801 (1981), Definition and penalty, provides:

   [1] Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills, or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, or cruelly killed any animal, and [2] whoever, having the charge or custody of any animal, either as owner or otherwise, [a] inflicts *unnecessary cruelty* upon the same, or [b] *unnecessarily fails* to provide the same with

   *proper food, drink, shelter, or protection from the weather,* shall for every such offense be punished by imprisonment in jail not exceeding 1 year, or by fine not exceeding $250, or by both such fine and imprisonment. [Emphasis added.]

2. The government informs us that it "disagree[s]" with Judge Hannon's ruling that the term "unnecessary cruelty" is unconstitutionally vague. It has not, however, appealed the point. Thus, as the government concedes, Judge Hannon's ruling is the law of the case. We express no views on that ruling.

a prosecution under the "unnecessary cruelty" provision Judge Hannon later declared unconstitutional, the evidence would still be admissible in a prosecution under the "unnecessarily fails" provision of the statute that survived. In *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the Supreme Court held that narcotics evidence obtained from a search incident to an arrest for violation of a "stop-and-identify" ordinance could be used against a criminal defendant in a drug prosecution, even though the ordinance that prompted the arrest was later declared unconstitutionally vague. Evidence obtained under a warrant based on a presumptively valid statute need not be suppressed in a later proceeding, after the statute has been declared unconstitutional, unless the statute itself purported to authorize searches forbidden by the Fourth Amendment. *Id.* at 39, 99 S.Ct. at 2633. Appellant does not contend that the "unnecessary cruelty" provision allowed the Humane Society to circumvent the Fourth Amendment. Thus, even if the warrant had simply authorized seizure of evidence that appellant had been "unnecessarily cruel" to the puppies, the evidence of 15 dehydrated, emaciated, and weakened puppies could be used against appellant in a prosecution for "unnecessarily failing" to provide them with proper food, water, and shelter.

### III.

### A.

■ Appellant next argues that, even as narrowed by Judge Hannon's ruling, the statute is unconstitutionally overbroad and vague. His overbreadth argument is frivolous. An overbroad statute is one that reaches "a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted). Appellant has not suggested any sort of constitutionally protected right to associate with animals—or any other constitutional right—that may be chilled by enforcement of the statute. *See State v. Kaneakua*, 61 Hawaii 136, 597 P.2d 590 (1979) (rejecting overbreadth argument against constitutionality of cruelty to animals statute raised by defendant engaged in cockfighting).

### B.

Appellant contends that the statute is vague on its face in that it requires citizens to guess the meaning of "unnecessarily" failing to provide "proper" food, drink, shelter, or protection from the weather. He warns that there is a gray area, that "the public may agree on some acts as violative of the statute, but 'they will disagree about many other acts without approaching absurdity'" (quoting *District of Columbia v. Walters*, 319 A.2d 332, 335 (D.C.), *cert. denied*, 419 U.S. 1065, 95 S.Ct. 650, 42 L.Ed.2d 661 (1974)). He then presents a parade of horribles, suggesting that if we allow appellant's conviction to stand, any dogowner could be prosecuted for having a dog "who is somehow sick or thin or otherwise not up to what a fancy Northwest veterinarian thinks it ought to be."

■ In cases not implicating First Amendment rights, one may not successfully challenge a statute for facial vagueness unless "the enactment is impermissibly vague in all its applications." *Village of Hoffman Estates, supra,* 455 U.S. at 495 & n. 7, 102 S.Ct. at 1191 & n. 7; *cf. Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983) (upheld facial vagueness challenge to criminal statute out of concern about "'potential for arbitrarily suppressing First Amendment liberties'" (citation omitted). A statute is not vague in all its applications if it requires one to conform conduct "to an imprecise but comprehensible normative standard"; it is facially vague only if "no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971) (citation omit-

ted) (striking city ordinance forbidding three or more persons from assembling in a manner "annoying" to passersby.) [3]

Appellant argues that the statute's modifying words—"unnecessarily" and "proper" —depend for their meaning on idiosyncracies of the trier of fact, and thus make the statutory prohibition so vague that no standard of conduct is ascertainable. This argument ignores the practical limitations on legislative drafting.

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiency specific to provide fair warning that certain kinds of conduct are prohibited.

*Leiss v. United States,* 364 A.2d 803, 806–07 (D.C.1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977) (quoting *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)); *see generally* L. TRIBE, AMERICAN CONSTITUTIONAL LAW, § 12–28 at 718–19 (1978). We agree with the analysis of the Supreme Court of Colorado, which recently rejected a vagueness challenge to prosecution under a statute providing for punishment of anyone who, "having the charge and custody of an animal, fails to provide it with proper food, drink, or protection from the weather." *People v. Allen,* Colo., 657 P.2d 447, 448 (1983) (en banc) (citation omitted). The court pointed out that "[t]he necessity of providing standards flexible enough to ensure the effective application of legislative policy to changing circumstances frequently requires the use of such words as 'reasona-

ble,' 'competent,' 'proper' and 'fair.'" *Id.* at 449–50.[4] It went on to conclude that the word "proper" in the Colorado statute gave adequate notice of the conduct proscribed. The supreme courts of other states have ruled similarly. *State v. Persons,* 114 Vt. 435, 437, 46 A.2d 854, 855 (1946) (words "unnecessarily" and "proper" in prosecution, tracking statute, for "unnecessarily fail[ing] to provide [certain cattle] with proper food and drink" are not unconstitutionally vague); *Wilkerson v. State,* 401 So.2d 1110 (Fla.1981) (word "unnecessarily" in statute prohibiting "unnecessarily or cruelly beat[ing], mutilat[ing], or kill[ing] any animal" is not unconstitutionally vague).

We conclude that the words "unnecessarily" and "proper" are not so indefinite as to render unconstitutionally vague the provision of the cruelty to animals statute, D.C.Code § 22–801 (1981), calling for punishment of anyone who "unnecessarily fails to provide" an animal in one's custody "with proper food, drink, shelter, or protection from the weather." Such words are "to be understood in their ordinary sense." *Persons, supra,* 114 Vt. at 437, 46 A.2d at 855. As the trial court instructed the jury here:

> The words unnecessarily and proper are to be understood in their ordinary sense and mean that a person, although he could provide food, drink or shelter as required to sustain the animals in reasonably good health, failed to do so. The law, however, does not require that Mr. Tuck guarantee that the puppies have always been in good health but rather that he provided such food, drink and shelter as would be reasonable under the circumstances.

---

**3.** Appellant, by acknowledging that "the public may agree on some acts as violative of the statute," in effect concedes that there is a comprehensible normative standard in the statute—a concession that, under *Village of Hoffman Estates, supra,* 455 U.S. at 495, 102 S.Ct. at 1191, means the provision of the statute at issue cannot be vague on its face. Appellant's argument that the statute may be vague as

applied to other dogowners in other circumstances is therefore irrelevant. *See id.*

**4.** The *Allen* court collected statutes from 44 jurisdictions, including D.C.Code § 22–801, which established a standard of care "in terms identical to or synonymous with that of Colorado: 'proper,' 'adequate,' 'sufficient,' or 'necessary.'" 657 P.2d at 450 & n. 6.

■ Although it is true that, "where a statute imposes criminal penalties, the standard of certainty is higher" than the standard applicable to statutes regulating business activity, *Kolender, supra,* 103 S.Ct. at 1859 n. 8, the statutory provision at issue here applies a sufficiently "comprehensible normative standard." *Coates, supra,* 402 U.S. at 614, 91 S.Ct. at 1688; *see Allen, supra,* 657 P.2d 447 and cases cited therein. To require more precision would be to require the legislature to draft a detailed code on the care and feeding of animals. The case law on vagueness is not so demanding.

### C.

■ Appellant argues, finally, that even if the statute is not unconstitutionally vague on its face, its application to him is so vague as to violate due process. He is wrong. Appellant cannot validly complain of being held to the standard articulated in the trial court's proper instruction to the jury, that of a "reasonable [person] under the circumstances" charged with providing food, drink, and shelter for animals in one's custody. Given extensive testimony that puppies in appellant's custody were suffering from dehydration and malnutrition, that they were being kept in cages without water, that they were weakened to the point where many were unable to stand up, and that they were desperate in their eagerness for the food placed before them, the jury had an ample evidentiary basis for convicting appellant as charged.

*Affirmed.*