RUTLAND,
January,
1830.
                    STATE *v.* HENRY BENEDICT,

Threats of great bodily harm, accompanied by acts showing a formed in-
tention to put them in execution, if intended to put the person threaten-
ed in fear of their execution, and if they have that effect, and are calcu-
lated to produce that effect upon a person of ordinary firmness, constitute
a breach of the public peace, which is punishable by indictment.

THIS was an information in three counts, the last of which
was as follows:

"And the state's attorney aforesaid, on his oath afore-
"said, further gives said court to understand and be informed,
"that Henry Benedict, of Rutland, in said county of Rut-
"land, on the 1st day of December, 1837, and on divers oth-
"er days and times between that date and the time of this
"presentment, with force and arms, at Rutland aforesaid,
"did greatly disturb and break the peace by tumultuous and
"offensive carriage, and by threatening, quarrelling and chal-
"lenging, and by lying in wait for one Sally Benedict, and
"by threatening to kill the said Sally Benedict, to the great
"disquiet, terror and alarm of the said Sally Benedict and
"other good citizens of this state, and other wrongs then and
"there did, to the evil example of others in like case offen-
"ding, contrary to the form, &c."

On the trial in the county court, the respondent pleaded *not
guilty*, and put himself upon the country.

The testimony in support of said third count was, in sub-
stance, that, at various times and places, the respondent had
threatened, with many awful imprecations, to take the life of
Mrs. Benedict, his wife, who then lived separate from
her husband, and had pending in the supreme court a li-
bel for divorce, which was the alleged ground of the
threats; and the testimony further tended to show that the
respondent had, about the time of these threats, at sundry
times been seen, late at night, lurking about the house where
Mrs. Benedict lodged.

The court instructed the jury, that if they believed the
threats were made by the respondent, with intent to put Mrs.
Benedict in fear of her life, or other bodily harm, and that
they were so made as to be calculated to produce such effect
upon a person of ordinary sagacity and forecast, and that
they did produce this effect, they would be warranted in find-

ing a verdict against the respondent, notwithstanding those <span>RUTLAND, January, 1839.</span>
threats were not made in the presence of Mrs. Benedict, or
under such circumstances as to induce a belief of imme-
diate personal violence.

<span>State v. Benedict.</span>

The jury found the respondent guilty upon the third count.
Whereupon he excepted to the instructions of the court to
the jury.

*R. R. Thrall*, for respondent.

1. A conviction cannot be had upon the 2d section of the
act for the punishment of inferior crimes for merely threaten-
ing another person. The prosecutor must prove an actual
beating. 2 Swift's Dig. 337–8.

2. At common law one is not liable to indictment for
threats and menaces of bodily harm, though the fear and ap-
prehension of the person threatened are excited, or his busi-
ness interrupted. There is no form for such indictment to
be found. 2 Black. Com. 120, 122. 4 do. 216, 222. 2
Chit. C. L. 842, 847.

3. The remedy in such case is, for the party threatened
to demand surety of the peace against such person. 4 Black.
Com. 252, 254. 3 Burn's Just. 347.

4. At any rate, to warrant a conviction, the threats must
be proved to have been made in the presence, or to have
come to the knowledge of the person threatened, and also
that the fears of such person were excited and his business
interrupted. Surety of the peace cannot be obtained unless
the person making the application clain s, under oath, that
he is actually under fear of bodily harm. 4 Blk. Com. 255.
3 Burn's Just. 350.

*S. Foot*, state's attorney, for the prosecution.
The statute is very general and comprehensive, and designed
to embrace offences of this character. The respondent's
conduct amounts to a *duress per minas*. A menace, wheth-
er made in the immediate presence of the person threaten-
ed or not, if attended with inconvenience, such as fear of
personal injury, is actionable *civiliter*, and punishable *crim-
inaliter*. 3 Blk. Com. 120. 6 East's Rep. 126, 133.

The opinion of the court was delivered by
REDFIELD, J.—Whatever was once thought upon the sub-
ject, it is now well settled, that mere threats, in words not
written, is not an indictable offence at common law. It is

said, in many of the books, that it was formerly indictable. This might have been, and probably was the case at the time the statute, in this state, in relation to the subject, was passed. It is there said "if any person shall, in any manner, disturb or break the peace, by tumultuous and offensive carriage, by threatening, quarrelling, challenging, assaulting, beating or striking any other person," he shall be liable, on conviction, to pay such fine as "the court, taking into consideration the situation of the party smiting or being smitten, the instrument and danger of the assault, the time, place and provocation, according to the nature of the offence, shall adjudge."

The phraseology of this statute would seem to indicate, with sufficient distinctness, that threatening was one of the modes of disturbing the public peace, which was intended to be punished criminally. Seven modes of disturbing the public peace are enumerated, for any one of which it is provided the offender shall pay such fine as the court shall adjudge. Had the statute left the matter here, no doubt could have arisen in relation to its import. It is absurd to suppose that any court, in assessing a fine, should not regard the enormity of the offence in all its essential circumstances.—But out of over caution it seems that is made an express requisition of the statute. And to prevent all misapprehension, the circumstances of aggravation or excuse are enumerated. And it is said, these circumstances do not include threatening or any of its forms, but exclude it. It will not so appear on close examination. The subdivisions of the offence begin with the least considerable, "tumultuous and offensive carriage," and go forward throughout the chain in a direct climax. Whereas, in enumerating the peculiar characteristics of enormity or excuse attending the several subdivisions of the offences, the statute begins with the highest grade, i. e. "smiting," &c., and proceeds throughout the degrees in an anticlimax. In this enumeration of the circumstances to be considered by the court in fixing the extent of the fine, only battery and assault are specifically named. The statute then concludes in general terms, "the time, place and provocation" which must, of course, refer to each of the seven species of offence defined in the enacting clause; and last of all, "ac-

cording to the nature of the offence shall be adjudged."—
What offence? Why, surely, a breach of the public peace
in any one of the modes named.

It is not necessary to inquire how far threats were punishable at common law, for the offence is here defined by statute. Any threats, which disturb the public peace, are made an offence. But what is the public peace?— Almost every one has some more or less certain notion of the public peace, and still it may not be very easy to define it in words. It is, so to speak, that invisible sense of security, which every man feels so necessary to his comfort, and for which all governments are instituted. A threat, in order to violate this sense of security, must be of some grievous bodily harm, must be put forth in a desperate and reckless manner, accompanied by acts showing a formed intent to execute them, must be intended to put the person threatened in fear of bodily harm, and must produce that effect, and must be of a character calculated to produce that effect upon a person of ordinary firmness. Threats of this character were no doubt intended to be made an offence and it would do manifest violence to the statute not so to decide.

The mere fact that such threats are not now considered an indictable offence at common law, can have but little weight in the argument. At the time the statute was passed this was considered doubtful, and the statute was made thus specific to relieve that doubt.

There is another reason why here, more than at common law, mere threats should be considered an offence punishable by indictment. At common law the person threatened can swear the peace against the offender, and obtain redress in that way, by obtaining security against the commission of the offence threatened. This mode of preventive justice has not been much resorted to, if, indeed, it exists in this state. It is believed the legislature intended the remedy here given to supersede its necessity. The sending of threatening letters is an offence of a different character.

Judgment, that the respondent take nothing by his exceptions, and that he pay a fine of $10, to the treasurer of the state, and costs of prosecution, &c.

BENNETT, J., dissenting.