STATE *v.* AMERICO ORLANDI ET AL.

Special Term at Rutland, November, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 6, 1934.

168

*Fred E. Gleason* for the respondents.

*Webster E. Miller,* State's attorney, for the State.

MOULTON, J. These respondents were tried together, and convicted, of a breach of the peace which consisted of an assault upon Sidney Rigg. Two others, Saldi and Ortiz, were placed upon trial at the same time, but a *nolle prosequi* was entered as to them, although the necessity for this procedure is not apparent.

An examination of the transcript discloses that the jury would have been justified in finding the following facts: Rigg was a granite cutter, employed in Barre. There was, at the time, a strike in progress, a fact of such notoriety that, even if it were not suggested by the record, judicial notice might be taken of it. Rigg lived in Middlesex, and was accustomed to drive home in his automobile every day at the close of his work. On the 10th of May, 1933, the respondents, with Saldi and Ortiz, left Barre for Middlesex shortly before Rigg did, in an automobile driven by Saldi. Their purpose was to stop Rigg, and, as one of them testified, talk to him and "try and make him sign up or have him stop working." Orlandi put it in this way: "We was talking that it would be a good idea if we got him to talk to him so there wouldn't be so many—trouble about going back to work to get him to join the union." Rigg lived upon a narrow, rough road which branched off from the main highway, and when the respondents reached a place where there was a slight curve with a bank some 8 or 10 feet in height at the side of the road, which was on an ascending grade, they

stopped and Saldi turned the automobile so that it faced toward Barre. This was about a quarter of a mile beyond a house occupied by Raymond Cooney and his wife, and some distance before Rigg's house would be reached. Saldi remained in the car, and the others got out. Savoia, Orlandi, Truba, and Ortiz remained in the road, or on the bank, and Edson went into the pasture at the side and then walked down until he was about 100 yards from the Cooney house. They waited for about ten minutes before Rigg appeared. As Rigg approached, he saw a beam lying across the road, and four men standing near it, one of whom (Savoia) was holding another beam. Someone called out, ''Get him,'' and the four came down to Rigg's car. Savoia and another, whose identity does not appear, had clubs, and Savoia broke the windows and windshield. Rigg seized a rifle which he had with him and fired two shots without injury to anyone. Orlandi wrested the weapon from his grasp, thrust it against his body, and threatened to shoot him. Rigg escaped from the car and fled to Cooney's house, pursued by Savoia and Orlandi, the latter having the rifle. As Rigg reached the house, Orlandi, holding the rifle by the barrel, struck at him with it, calling him abusive names and threatening to ''get him.'' Meanwhile, Edson ran down from the pasture, apparently trying to intercept Rigg, but, as he reached the highway, slipped and fell, being at that time about 15 feet behind him. What Truba was doing does not appear, but he was close to Rigg's car when the windows were broken and the struggle over the rifle was taking place. After Rigg had reached shelter, the respondents, with Ortiz, entered Saldi's car and left the scene taking the rifle with them, which they hid by the roadside at a point some distance away. They were met by officers as they were returning to Barre by a back road, which they had taken because they were afraid of being arrested. In the mêlée Rigg received several cuts and blows upon his face and head.

▇▇ Under exceptions taken to the denial of a motion to direct a verdict of not guilty it is urged that Rigg was unable to identify the person who struck him or the one who followed him with the rifle to the Cooney house, and that there was no evidence connecting Truba and Edson with any specific act. But, as we have seen, the evidence tended to show that two men, of whom Savoia was one, had clubs, and that Savoia broke the

windows and windshield of the car, and later joined in the pursuit when Rigg retreated. This alone was sufficient to constitute a breach of "that sense of security and tranquillity, so necessary to one's comfort, which every person feels under the protection of the law" (*State* v. *Mancini,* 91 Vt. 507, 511, 101 Atl. 581, 583; *State* v. *Benedict,* 11 Vt. 236, 239, 34 A. D. 688), and warranted a verdict of guilty as against this respondent. It was not necessary, therefore, so far as Savoia was concerned, that Rigg should have been able to say which respondent struck him. It is true that Rigg was unable to identify Orlandi as the one who took the rifle from him, threatened to shoot him, and after following him to the Cooney house, struck at him with the weapon. But both Cooney and his wife gave testimony identifying Orlandi as the man who had the rifle and struck at Rigg, using vile language and a threat at the same time. That these acts and words constituted a breach of the peace cannot be questioned.

 Where several persons combine under a common understanding and with a common purpose to do an illegal act, every one is criminally responsible for the acts of each and all who participate with him in the execution of the unlawful design. *Commonwealth* v. *Campbell,* 7 Allen (Mass.) 541, 544, 83 A. D. 705; *State* v. *Taylor,* 70 Vt. 1, 11, 39 Atl. 447, 42 L. R. A. 673, 67 A. S. R. 648. All who knowingly and intentionally participate in the commission of a misdemeanor are principals and may be convicted thereof either separately or jointly. *Village of St. Johnsbury* v. *Thompson,* 59 Vt. 300, 312, 9 Atl. 571, 59 A. S. R. 731. While presence at the scene of the crime is not alone sufficient to establish participation, or aiding and abetting, unless there is something to show that the person so present in some way has procured or incited or encouraged the act done by the principal perpetrator (*Brown* v. *Commonwealth,* 130 Va. 733, 107 S. E. 809, 16 A. L. R. 1039, 1041; Wharton Criminal Law [12th ed.], vol. I, par. 246), yet where such presence is by preconcert with the design to encourage, incite, or, if it should become necessary, to render assistance, then, even though no particular act is shown, there is participation. *Morris* v. *State,* 146 Ala. 66, 96, 97, 41 So. 274; *State* v. *Stark,* 63 Kan. 529, 66 Pac. 243, 54 L. R. A. 910, 912, 88 A. S. R. 251. So, when the evidence is sufficient to enable the jury to

find beyond a reasonable doubt that several persons have formed a common design to assault another, and are present for that purpose at the place agreed upon for the commission of the offense, each one is criminally responsible for the acts of the others in the prosecution of the design, and for everything done by any one of them which follows incidentally in the execution of the design as one of its natural consequences, even though it was not intended as a part of the original plan. *Gibson* v. *State,* 89 Ala. 121, 128, 8 So. 98, 18 A. S. R. 96. The fact of such complicity, or aiding and abetting, may be proved by circumstantial evidence. *Brown* v. *Commonwealth, supra; Willi* v. *Lucas,* 110 Mo. 219, 19 S. W. 726, 33 A. S. R. 436, 438. And the common design need not be the result of an express agreement between the respondents; but proof by circumstantial evidence of an implied understanding is sufficient. *Gibson* v. *State, supra.*

 In view of the evidence as to what was done by the respondents when they met Rigg in Middlesex, the jury would have been justified in finding that their purpose in setting out to stop him was not peaceably to persuade him to stop work and join the union, but was to compel him by force and intimidation to accede to their demand. If it were not so, the jury might have asked themselves, Why did they not meet Rigg on the street in Barre? Why did they not go to his house? Why did they lie in wait for him in an unfrequented spot? Why was an obstruction placed in the road? Why was there immediate resort to violent action? Such a course of conduct, which the testimony warranted the jury in finding, was quite inconsistent with a design to obtain the desired result by fair and reasonable means. There was, therefore, ample evidence tending to show a common design to perform an illegal act.

 It was reasonable to infer that Truba, who was present by preconcert, was there to encourage, promote, and, if necessary, to assist in the unlawful design, and that this was known to the others. The evidence also led to the conclusion that Edson's part in the transaction was to take such a position that he could, if required, cut off Rigg's retreat, and that he endeavored to do so, but was frustrated in his attempt only by accident of his fall. It is argued that the only evidence implicating Edson is the testimony of Rigg that he (Edson) was trying

to "head him off," and that this was a mere conclusion of the witness. But the actions of this respondent were in themselves a sufficient basis for the inference that he was acting in concert with the others. The motion for a verdict was properly overruled, and what we have said in regard to it disposes also of certain exceptions to the charge, taken upon the ground that there was no evidence of a common design.

Subject to respondent's exception, the State was permitted to show by Rigg that when he saw the car in which the respondents drove away at Middlesex the rear number plate was bent up. The transcript shows that objection was that the testimony was incompetent, irrelevant, and immaterial. But without considering the question thus raised, it is enough to say that the witness had previously testified to the same thing without objection or exception. So, if there was error, it was rendered harmless. *State* v. *Stacey,* 104 Vt. 379, 398, 160 Atl. 257, 747; *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 117, 119, 130 Atl. 758; *Herrick* v. *Bank of Holland,* 83 Vt. 502, 512, 77 Atl. 6. Indeed the error, if any, was trebly cured for the witness, on being recalled later in the trial, again testified without objection, to the condition of the number plate (*Residents of Royalton* v. *C. V. Ry. Co.,* 100 Vt. 443, 450, 130 Atl. 782; *Murray* v. *Nelson,* 97 Vt. 101, 108, 122 Atl. 519; *Griffin* v. *Boston & M. R. R.,* 87 Vt. 278, 289, 89 Atl. 220; *Livingston Mfg. Co.* v. *Rizzi,* 86 Vt. 419, 421, 85 Atl. 912), and so did another witness, Cargill, so far as appears of equal credibility, who saw the automobile as the respondents were leaving the scene of the affray. *People's Nat. Bank* v. *Brunelle,* 101 Vt. 42, 47, 140 Atl. 160; *Burke* v. *Power's Estate,* 100 Vt. 342, 345, 137 Atl. 202.

The witness Rigg was asked, on direct examination, what Edson did in connection with the transaction. The objection was made, on behalf of Edson alone, that, because the witness had said that he was unable to identify the four men who were present, he was unable to tell what this particular respondent did. The answer, taken under exception, was "As I left the car, I was running down towards Cooney's house, I seen Mr. Edson come off from the bank. He was trying to get ahead of me to head me off."

There was no error in the admission of this evidence, over the objection stated. Edson was not one of the four men who were

174

grouped around Rigg's automobile, but was on the bank in the pasture beside the road. It later appeared, from Rigg and from Edson himself, that the two were acquainted with each other, so there was no question of lack of identification. The argument in respondents' brief is that the act of Edson was not susceptible of any inference of guilt, but this was not the ground for exception as stated on trial, and so is not for consideration here. "When specific objections are made below, the excepting party is confined to them here." *Townshend* v. *Townshend,* 84 Vt. 315, 318, 79 Atl. 388, 389. See, also, *State* v. *Fairbanks,* 101 Vt. 30, 39, 139 Atl. 918; *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 116, 113 Atl. 758; *Bean* v. *Colton,* 99 Vt. 45, 50, 130 Atl. 580; *Massucco* v. *Tomassi,* 80 Vt. 186, 192, 67 Atl. 551. We have, however, previously given attention to the question, and have held that the inference was proper.

██ ██ The witness Rigg was asked, "Did the men who came to your car with clubs hit the car any other place but the windows?" The objection was that the question was indefinite, because the specific respondents so armed were not identified. The question was allowed, subject to exception, and the answer was "No." There was no error here. The witness testified that Savoia and another man, whom he could not identify, had clubs. The fact that this second man was unidentified did not operate to exclude the question. Besides this, it was not claimed that any injury beyond the breaking of the windows and windshield was done to the automobile, so the answer was harmless, in any event.

██ The witness Cooney was permitted to testify that one of the respondents, who followed Rigg to the house, called Rigg a vile name and said that he would "get him." The objection was that the identification of this respondent was insufficient. The witness was asked to point out the man who said this, and indicated Orlandi. He was then asked, "That is the one?" and answered "Looks like him," and, again, "You say that was the man?" and answered, "Why yes I believe so." This was competent and a sufficient basis for the admission of the testimony. A witness may give his impression of a fact, although he will not state positively that the fact is so, although the fainter the impression, the less its weight as evidence. *State* v. *Ward,* 61 Vt. 153, 187, 17 Atl. 483. "It is not necessary that

any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender." *Commonwealth* v. *Cunningham*, 104 Mass. 545, 547. Furthermore, Mrs. Cooney, who was present, positively identified Orlandi as the man, and testified to what he said, and when Orlandi took the stand, he admitted that he followed Rigg to the Cooney house with the rifle in his hand, although he denied using the language and the conduct attributed to him. The weight of the evidence was for the jury, and they might reasonably have found that this respondent had been satisfactorily identified.

 It is urged in respondent's brief that, although this evidence was received only as against Orlandi, the jury were not told to disregard it as to the others. No request for such an instruction was made, and so the other respondents have no cause to complain. It was the duty of counsel to call the attention of the court to the claimed shortage or error so that it might then be corrected. *Dailey* v. *Bond*, 94 Vt. 303, 304, 305, 111 Atl. 394; *Merrihew's Admr.* v. *Goodspeed*, 102 Vt. 206, 216, 66 A. L. R. 1109; *Dailey* v. *Town of Ludlow*, 102 Vt. 312, 314, 147 Atl. 771. And, indeed, since there was evidence tending to show a common design, the testimony might well have been admitted as against all of the respondents.

██ Rigg's automobile, with the windows and windshield broken, was received as an exhibit, and the jury were permitted to inspect it, subject to exception by all the respondents except Savoia, on the ground that there was no evidence connecting any one of them with any damage to the car. But since there was, as we have seen, evidence from which the jury could infer a community of purpose among them, in consequence of which one of them had done the damage, the evidence was properly received. It was, of course, admissible in corroboration of Rigg's testimony.

 The court charged the jury as follows: "The burden is on the State to prove the guilt beyond a reasonable doubt. Each fact which is necessary to the conclusion that a respondent committed the crime charged must be fully established beyond a reasonable doubt before you can convict. The State may have failed to prove various facts by the measure of proof indicated. Yet if it has proved such facts as in your judgment warrant a

conviction, your verdict should be guilty." All of the respondents except Edson took an exception to the last sentence of the foregoing instruction, on the ground that it permitted the jury to return a verdict of guilty, notwithstanding they entertained a reasonable doubt.

But a charge is not to be construed piecemeal, and an instruction claimed to be erroneous must be read in the light of what is elsewhere said upon the subject. *In re Moxley's Will,* 103 Vt. 100, 104, 152 Atl. 713, and cases cited. Reading the language of the court as a whole, we fail to find substance in the criticism. Taking it in connection with what the court had just said, the jury could not have gained the impression from the concluding expression that they were at liberty to convict without being satisfied of guilt beyond a reasonable doubt. The exception is unavailing.

■■ The respondents claimed that Rigg was the aggressor and justified such acts as they admitted as having been done in self-defense. This issue was submitted to the jury, and the court said: "Just what did occur at the scene of this disturbance? Did Rigg do the things claimed to have been done by him by the respondents at the time and under the conditions and situation as claimed, or did things occur in the manner Rigg claims they occurred?" An exception was taken, on the ground that Rigg had admitted that his acts were exactly as the respondents claimed, and that therefore this question should not have been submitted. But there was no such admission by Rigg. He testified that he did not fire until the respondents had congregated at his automobile, two being armed with clubs, and Savoia had broken the windows and windshield. The respondents claimed, and their testimony was to the effect, that Rigg fired upon them before they had reached the car, while their intent was pacific, and that he himself broke the windows with his rifle. Thus there was a conflict in the evidence, and the question was properly put to the jury.

The record has been carefully examined, and no error has been made to appear.

*Exceptions overruled. Let execution be done.*