**State of Vermont v. Norman James Carter**

[415 A.2d 185]

No. 309-78

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Costes, District Judge, Specially Assigned

Opinion Filed April 8, 1980

*Mark J. Keller,* Chittenden County State's Attorney, and *Norman R. Blais,* Chief Deputy State's Attorney, Burlington, for Plaintiff.

*James L. Morse,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant.

**Hill, J.** Defendant appeals from his conviction on an amended information charging him with receiving stolen property with a value in excess of one hundred dollars, to wit, one McCulloch chain saw, knowing said property to have been stolen, in violation of 13 V.S.A. § 2561.

Trial by jury commenced on July 24, 1978, the State proceeding on the theory that defendant was an accomplice to the commission of the crime charged.[1] At the close of the State's case, and again at the close of the presentation of all the evidence, defendant moved for judgments of acquittal. V.R.Cr.P. 29. Each time his motion was denied by the trial court.

The focal issue on appeal is whether there was sufficient evidence to allow the jury to conclude that the defendant was guilty beyond a reasonable doubt of the offense charged.[2] Viewing the evidence in the light most favorable to the State, and excluding the effect of modifying evidence, *State* v. *Ballou*, 127 Vt. 1, 3, 238 A.2d 658, 660 (1968), we hold that there was not.

The record discloses that on February 26, 1978, the defendant's son, Harry Carter, contacted James Dobson, an undercover police officer with the Burlington Police Department,

---

[1] Although the information charged defendant as a principal, he could be convicted on proof that " 'by counseling, hiring or otherwise procuring' [he] caused the offense in question to be committed." *State* v. *Sears*, 130 Vt. 379, 381–82, 296 A.2d 218, 219–20 (1972).

[2] Defendant also raises on appeal for the first time the claim that the trial court erred in instructing the jury as to the essential elements of the crime charged. In support of this claim, defendant relies on *State* v. *Audette*, 128 Vt. 374, 378, 264 A.2d 786, 789 (1970), and *State* v. *Morrill*, 127 Vt. 506, 511–12, 253 A.2d 142, 145–46 (1969), for the proposition that a trial judge is under a duty to charge correctly as to the essential elements of the offense, and that an erroneous charge is reviewable by this Court regardless of objection. The State challenges the applicability of the cases cited by the defendant, and argues that the issue is not properly before this Court, since defendant interposed no objection to the trial court's charge. See V.R.Cr.P. 30; *State* v. *Bushey*, 137 Vt. 155, 159, 400 A.2d 993, 996 (1979). Whether the charge was in fact erroneous, or whether this case presents a situation where this Court will review a jury charge absent an objection, are questions we need not decide today in light of our disposition of defendant's sufficiency of the evidence claim.

and offered to sell to the latter a chain saw. A meeting was arranged, and officer Dobson drove to the apartment of the defendant's ex-wife on Willow Street in Burlington, where he met Harry and the defendant. The three men then travelled, in the officer's car, to an apartment on Peru Street in Burlington, where they met two other men, one of whom was referred to as Bill.

On arrival at the Peru Street apartment, the men went to the kitchen, whereupon Harry asked Bill for the saw. Following Bill's instructions, Harry went to another location within the apartment to get the contraband, while the others remained in the kitchen. Returning with the saw, Harry attempted to demonstrate it, but the pull cord used to start the engine broke. Both Harry and Bill endeavored to repair the saw, while the defendant looked on and offered suggestions as to proper repair. At no time did the defendant become physically involved in the mending process.

Once the chain saw was repaired Harry demonstrated its efficacy by sawing half the way through the leg of the kitchen table. Satisfied with the operation of the saw, officer Dobson negotiated with Bill over the price, finally arriving at the mutually satisfactory figure of forty-five dollars, as compared to its fair market value of one hundred and twenty-five dollars. The officer gave the agreed upon amount to Bill, who then, without comment or explanation, handed ten dollars to the defendant.

Upon consummation of the transaction, the men engaged in further conversation, during the course of which the defendant offered to sell to the officer some fishing equipment which was located in a closet at the apartment. The defendant also informed Dobson that should he be interested in more chain saws "they would be getting in a load of them." Shortly thereafter, the defendant, Harry, and the officer returned to the Willow Street apartment.

Three months after the chain saw transaction, officer Dobson again had the occasion to meet the defendant. At this later meeting, Dobson queried of the defendant whether the chain saw he had purchased was "hotter than a bastard." The defendant answered in the affirmative. Dobson also asked him whether he had gotten anything out of the deal, and the defendant replied, "yes, ten dollars." At trial, the defendant

testified that he did not know the chain saw was stolen at the time of the sale, but found out later. He also stated that he did not know why Bill handed him the ten dollars, except possibly because he was standing in a position closest to Bill at the time the money changed hands.

We find it difficult to see how the foregoing facts support the conclusion that the defendant was an accomplice to the crime charged. Since the substantive crime charged was receiving stolen property, the State bore the burden of proving that the defendant aided or abetted in the unlawful receipt of stolen property, knowing that the property was obtained by theft. See *State* v. *Guppy*, 129 Vt. 591, 594–96, 285 A.2d 717, 719–20 (1971); *State* v. *Alpert*, 88 Vt. 191, 202–04, 92 A. 32, 33–34 (1914); *State* v. *Bannister*, 79 Vt. 524, 527, 65 A. 586, 586 (1907).

The State argues that the cumulative weight of the evidence of the defendant accepting the ten dollars, his statement about acquiring more chain saws, his advice regarding repair of the saw, the discrepancy between the sale price of the saw and its fair market value, and his admission three months subsequent to the sale that the saw was stolen provided a sufficient basis on which "the jury would be justified in finding beyond a reasonable doubt that the [defendant]" was guilty. It is well established, however, that in order to be held liable as an accomplice it must be shown that the defendant "knowingly and intentionally" participated "to some substantial measure" in "a common understanding," the goal of which was the commission of "a common criminal objective." *State* v. *Sears, supra,* 130 Vt. at 382, 296 A.2d at 220; *State* v. *Orlandi,* 106 Vt. 165, 171, 170 A. 908, 910–11 (1934). Accord, *State* v. *Mecier,* 126 Vt. 260, 262, 227 A.2d 298, 299–300 (1967); *State* v. *Barr,* 126 Vt. 112, 122, 223 A.2d 462, 469–70 (1966).

The evidence adduced at trial does not show that the defendant participated to some substantial measure in the unlawful *receipt* of stolen property. *State* v. *Sears, supra,* 130 Vt. at 382, 296 A.2d at 220. It was incumbent on the State to prove that the defendant "in some way . . . procured or incited or encouraged" the illicit obtainment of the pilferred chain saw. *State* v. *Orlandi, supra,* 106 Vt. at 171, 170 A. at 910. This the

State could have done by showing that the defendant assisted or counseled in the taking or maintenance of possession, actual or constructive, of the stolen property. *State* v. *Longway*, 137 Vt. 165, 167, 400 A.2d 1002, 1003 (1979); *State* v. *Ballou, supra,* 127 Vt. at 6, 238 A.2d at 662. But the State's evidence is deficient in this regard. There is scant evidence, if any at all, that the defendant assisted in bringing the saw within the "care, management, [or] physical control" of the alleged criminal combination, or that he somehow procured access to the "immediate physical possession [or] control" of the contraband for the benefit of the coterie, *State* v. *Ballou, supra,* or that he had any independent control or influence over the chain saw, or his alleged confederates, by which he could have gained access to, or assured the delivery of, the stolen article. See *United States* v. *Jones,* 308 F.2d 26, 30–31 (2d Cir. 1962) (en banc) (Waterman, J.).

Furthermore, while we agree with the State that its evidence was more than sufficient to show that the defendant believed the goods were stolen, *State* v. *Alpert, supra,* 88 Vt. at 202–04, 92 A. at 33–34, a superabundance of evidence on one element of a crime will not suffice to excuse the State's burden of proof as to the other essential elements. Insofar as there was any evidence that arguably was probative of assistance in the receipt or continued possession of the saw, it was the acceptance of ten dollars, a statement as to future receipt of more chain saws, and the giving of oral advice as to chain saw repair. But this evidence was ambiguous and equivocal, and was not sufficient to satisfy the State's burden of proof as to the essential element of receipt.

In the absence of evidence that the defendant procured or incited or encouraged the illicit receipt of the stolen property, his mere "presence at the scene of the crime is not alone sufficient to establish participation." *State* v. *Orlandi, supra,* 106 Vt. at 171, 170 A. at 910. And, although accomplice liability can be established by presence at the scene of the crime "where such presence is by preconcert with the design to encourage, incite, or, if it should become necessary, to render assistance," the State failed to show that the defendant's presence was pursuant to a prior agreement, or that he was at the scene in order to aid in the receipt of the property. *Id.*

Mere propinquity to, and acquiescence in, the commission of a crime does not automatically make one an accomplice.

If the State's evidence showed any participation on the part of the defendant, it was facilitation of the sale of the stolen property, not facilitation of its receipt or continued possession. But the casual facilitator of a sale who exercises no dominion or control over the contraband cannot be said to have received or possessed it. *United States* v. *Jones, supra,* 308 F.2d at 30. And without a showing of receipt or possession, one cannot be held answerable for the crime of receiving stolen property.

*The judgment of conviction is reversed, the sentence striken, and the entry of judgment of acquittal is ordered.*