### State of Vermont v. Brian Wood

[465 A.2d 1372]

No. 82-430

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 6, 1983

*Philip H. White,* Orleans County State's Attorney, and *George K. Hurst,* Deputy State's Attorney, Newport, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Underwood, J.** Defendant appeals from a judgment convicting him, after a court trial, of the crime of breaking and entering in the nighttime with intent to commit larceny. 13 V.S.A. § 1201. Defendant argues that (1) the evidence offered at trial was insufficient to convict him of breaking and entering in the nighttime, and (2) the State used perjured testimony to ob-

tain his conviction, thereby violating his right to due process. We disagree with both of defendant's contentions and affirm.

The pertinent facts are as follows. On September 7, 1981, the Newport Police Department learned from a confidential informant that there might be a burglary at the Northeast Kingdom Mental Health Building that night. A stakeout was organized. Shortly after 1:00 a.m. a Newport policeman, who was stationed inside the building, observed four people outside the building. He heard banging on the outside door and at about 1:20 a.m. saw three people approach the back door. He then heard noises inside the building indicating that they had gained entry. He radioed for assistance, and when additional police arrived, they arrested the three persons who had entered the building, one of these being the defendant, and the fourth person who had stayed outside to act as the lookout.

Defendant was charged with breaking and entering in the nighttime. At his trial two of the persons arrested with him at the mental health building testified for the State. Their testimony established the following events. On the evening of the incident in question, defendant and three other young men were sitting around talking in an apartment in Newport. One of the men got hungry and inquired about some food. Defendant's brother said that there was food at the mental health building. The four men left the apartment and walked across town towards the building. On the way each of them, including defendant, discussed how to get into the building.

About 1:15 in the morning, the four men showed up at the mental health building. One of the men took a jack handle from a van located in the building's parking lot and broke the lock on the cellar door. Three of the men, including defendant, then entered the building. Defendant's brother stayed outside as a lookout. The three men climbed up a stairway which led to the main floor. When they got to the top of the stairs they found a locked door. One of them broke the latch on the door and opened it. They then entered the main section of the building. Once inside, defendant pointed to a door and said that the food was in there. At that moment the police arrived, and all four were arrested.

After a court trial, the court stated in its findings of fact that:

The Court is satisfied beyond a reasonable doubt that the State has proven the Defendant's knowledge of the planned burglary, including its purpose, from the beginning when [one of the men] said he was hungry and they should go get the food, to the end of the venture when the police took them into custody. He knowingly and voluntarily went along on this venture.

The court considered this to be "the classic tagalong case where a criminal act is conceived in the minds of others, carried out to completion, and the defendant with full knowledge of what is to be done joins the group and stays with it to the end." It concluded that defendant was guilty of participation in a criminal venture—breaking and entering in the nighttime with the intent to commit larceny. Defendant then moved for a judgment of acquittal which the court denied.

Defendant claims that the evidence introduced at trial was insufficient to establish his guilt on the charge of breaking and entering. Specifically, he argues that a "tagalong" is not guilty as an accomplice and that the State failed to prove that he intentionally participated to any substantial measure in the burglary.

As support for his argument, defendant relies on *State* v. *Carter*, 138 Vt. 264, 415 A.2d 185 (1980), and *State* v. *Orlandi*, 106 Vt. 165, 170 A. 908 (1934). In *Carter*, we stated that "in order to be held liable as an accomplice it must be shown that the defendant 'knowingly and intentionally' participated 'to some substantial measure' in 'a common understanding,' the goal of which was the commission of 'a common criminal objective.' " *Id.* at 268, 415 A.2d at 187 (quoting *State* v. *Sears*, 130 Vt. 379, 382, 296 A.2d 218, 220 (1972), and *State* v. *Orlandi, supra,* 106 Vt. at 171, 170 A. at 910–11). In *Orlandi,* we held that "presence at the scene of the crime is not alone sufficient to establish participation." *Id.* at 171, 170 A. at 910. Based on these two holdings, defendant maintains that he cannot be found guilty of breaking and entering because: (1) although he had knowledge of the criminal activity, he did not intend to assist in it; and (2) although he was present at the scene of the crime, he did not participate in it.

Defendant is correct in stating that knowledge and presence at the scene is not enough. However, he ignores the

uncontradicted facts established at trial that he assisted in the break-in, entered the building with two others and was in the process of pointing out to them where the food was when the police arrived. Thus, defendant not only had knowledge of the criminal activity, but intentionally assisted it. Similarly, he was not merely present at the scene of the crime, but participated in it. Although the court characterized defendant as a "tagalong," its findings make clear that he "knowingly and intentionally participated" in the crime. As such, it was not error for the trial court to deny defendant's motion for judgment of acquittal. The State met its burden of proving that defendant was guilty of breaking and entering. See *State* v. *Carter, supra,* 138 Vt. at 268, 415 A.2d at 187.

Defendant next argues that the State knowingly permitted the use of perjured testimony at trial. He bases this allegation upon the evidence that the police had prior warning of a possible burglary at the mental health building whereas the testimony of the two participants in the burglary was that the venture was planned spontaneously thirty minutes prior to their arrest. Defendant maintains that this inconsistency is proof that the two participants were lying. However, we do not reach the issue of whether or not defendant has in fact established that perjury did take place at the trial, since defendant's claim of error has been waived by his failure to raise it below. *State* v. *Patnaude,* 140 Vt. 361, 368, 438 A.2d 402, 404 (1981) ; *State* v. *Prue,* 138 Vt. 331, 331–32, 415 A.2d 234, 234 (1980).

The only issues not raised at trial which may be considered on appeal are glaring errors—those that are so grave and serious that they strike at the heart of defendant's constitutional rights. *State* v. *Kasper,* 137 Vt. 184, 191, 404 A.2d 85, 89 (1979) ; *State* v. *Morrill,* 127 Vt. 506, 511, 253 A.2d 142, 145 (1969). In the instant case we find no such error; defendant waived his perjury argument by failing to raise it below.

*Affirmed.*