### State of Vermont v. Michael J. Neale

[491 A.2d 1025]

No. 82-222

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed March 1, 1985

424

426

*John J. Easton, Jr.*, Attorney General, and *Robert V. Simpson, Jr.*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Nancy E. Kaufman*, Montpelier, for Defendant-Appellant.

**Hill, J.** The defendant appeals his conviction for knowingly and unlawfully cultivating a regulated drug in violation of 18 V.S.A. § 4224(g). We affirm the conviction but remand the case for resentencing.

The pertinent facts are as follows. In the early evening of August 21, 1981, Orange County Sheriff Gerald Eldred was notified by Mark Durkee, a local farmer, that marijuana was growing in a garden located in a field used by Durkee to pasture his cows. The land on which the pasture and garden were located was owned by Durkee's father-in-law, wife and son. The defendant used this space for his garden with the owners' permission. The defendant lived in a house, located across the road from the garden, which he also rented from Durkee's father-in-law, wife and son.

About an hour after the conversation with Durkee, Sheriff Eldred arrived at Durkee's barn with some garbage bags to be used as receptacles for the marijuana. Durkee led the sheriff through the pasture and up a hill to the garden, which was approximately 60 feet long and 25 to 40 feet wide. The garden, which was 400 to 600 feet away from the road, was surrounded by a four-strand barbed wire fence. Marijuana plants were visible from at least two sides of the garden, although none were visible from the side of the garden facing the road. Durkee removed one or more fence posts and the two men entered the garden. The sheriff pulled up nineteen marijuana plants that were growing among some rows of corn, and put the plants in

the garbage bags. He then walked across the road to the defendant's home and gave the defendant a citation for possession of marijuana. The defendant was later convicted of illegally cultivating marijuana. 18 V.S.A. § 4224 (g).

## I.

The defendant contends that under the Fourth Amendment to the United States Constitution Sheriff Eldred should have obtained a search warrant before seizing the marijuana. Since the sheriff did not obtain a warrant, the defendant argues that the trial court erred in denying his motion to suppress the marijuana and the laboratory analysis of the plants.

The Fourth Amendment to the federal Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The United States Supreme Court recently determined the applicability of the Fourth Amendment to fact patterns similar to the one at bar. In *Oliver* v. *United States*, — U.S. —, 104 S. Ct. 1735 (1984), police officers entered onto the lands of the defendants without warrants and found marijuana growing in secluded fields. One of the fields was surrounded on four sides by woods, fences and embankments and was located over a mile from the road leading to the property. The entrance to the property had a locked gate, and "no trespassing" signs were posted at regular intervals. The other marijuana field was fenced in with chicken wire and was located in a secluded area in the woods; "no trespassing" signs were posted on the property.

The Supreme Court held that the police officers' warrantless searches of these fields were not improper under the Fourth Amendment. The Court stated that the amendment's protection against unreasonable searches and seizures does not extend to "open fields," but only to a person's home and its

"curtilage," the area immediately surrounding and associated with the home. *Id.* at —, 104 S. Ct. at 1741–42. The Court's holding reaffirmed its earlier holding in *Hester* v. *United States,* 265 U.S. 57 (1924), in which the Court stated that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields." *Id.* at 59. In another case, *Katz* v. *United States,* 389 U.S. 347 (1967), the Supreme Court rejected the notion that the Fourth Amendment covers only certain "constitutionally protected areas," and instead emphasized that the focus should be on whether the defendant had a reasonable expectation of privacy in the area that was searched or in the thing that was seized. *Id.* at 350–51. The Court in *Oliver* held that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home," — U.S. at —, 104 S. Ct. at 1741, and that "no expectation of privacy legitimately attaches to open fields." *Id.* at —, 104 S. Ct. at 1742.

Therefore, under the holding in *Oliver,* whether the defendant's garden is protected by the Fourth Amendment depends on whether that area is considered part of the home or its curtilage. In the case at bar, the defendant's garden was not within the area immediately surrounding the defendant's home, but rather was located in a pasture across the road, and more than 400 feet from the road. Since the garden was located in an "open field," under *Oliver* the defendant had no legitimate expectation of privacy in his garden. Thus, the Fourth Amendment did not require the sheriff to procure a warrant before entering the garden and seizing the marijuana.

## II.

The defendant's next claim is that the State failed to prove beyond a reasonable doubt that the defendant had cultivated the marijuana that was growing in the garden. Therefore, the defendant argues that the trial court erred in denying the defendant's motion for judgment of acquittal.

The test for evaluating the sufficiency of the evidence produced at trial is "whether the evidence, when viewed in the light most favorable to the State, is sufficient to convince a rea-

sonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State* v. *Derouchie,* 140 Vt. 437, 445, 440 A.2d 146, 150 (1981).

■ After reviewing the transcript of the trial in this case, we conclude that the State produced sufficient evidence to convince a reasonable trier of fact beyond a reasonable doubt that the defendant had cultivated the marijuana in the garden. First, the State produced evidence showing that the marijuana had been cultivated. Both the sheriff and Durkee testified that the marijuana was growing in rows, and that the ground around the marijuana had been weeded. Durkee also testified that in the spring the defendant had fenced in the garden, rototilled it, and fertilized it. We also think the State produced sufficient evidence to show that it was the defendant who had done the cultivating. Testimony revealed that the defendant worked in the garden at least once or twice a week, and referred to it as "my garden." Finally, the State's evidence showed that the only two people who had been seen working in the garden during the time the marijuana was growing were the defendant and his wife.

The defendant cites several opinions from other jurisdictions that address the issue of the sufficiency of proof of cultivation. In all of those cases, the defendants were convicted of possessing or cultivating marijuana.[1] The defendant argues, however, that the evidence in those cases was not as "equivocal" as the evidence in this one. We disagree with the defendant's interpretation of the evidence in those cases.

The trial judge in this case instructed the jury that it could find the defendant to be an accomplice to the felony of cultivating marijuana (and thus punishable as a principal) if it found that the defendant knowingly participated in a common plan or scheme to cultivate marijuana. 13 V.S.A. § 3; *State* v. *Carter,* 138 Vt. 264, 268, 415 A.2d 185, 187 (1980).[2] The defendant

---

[1] In one case, *State* v. *Underwood,* 281 S.E.2d 491 (W. Va. 1981), the defendant's conviction for manufacturing marijuana was reversed on appeal on grounds other than the issue of the sufficiency of the evidence. In each of the other cases the defendant cites, the State's evidence was found to be sufficient to sustain the convictions on appeal.

[2] The information charged the defendant as a principal; however, 13 V.S.A. § 3 allows the conviction of a defendant charged as a principal if the State proves beyond a reasonable doubt that the defendant aided

argues that the State did not produce sufficient evidence of a common plan to convict the defendant of being an accomplice. We disagree. The evidence, when viewed in the light most favorable to the State, *State* v. *Derouchie, supra,* 140 Vt. at 445, 440 A.2d at 150, establishes that the defendant was seen working in the garden with his wife. This evidence, combined with the other evidence listed above, could convince a reasonable trier of fact that the defendant was guilty of cultivating marijuana either individually or as an accomplice of his wife.

We conclude that the trial court did not err in denying the defendant's motion for judgment of acquittal based on insufficient evidence.

### III.

■■ The defendant next argues that the trial judge erroneously failed to instruct the jury that in order to convict the defendant it must find beyond a reasonable doubt that the defendant *knowingly* cultivated marijuana. Knowledge that the substance being cultivated is marijuana is an essential element of the offense for which the defendant was convicted. 18 V.S.A. § 4224(g) ("A person knowingly . . . cultivating . . . a regulated drug shall be imprisoned for not more than five years and fined not more than $10,000.00"). The trial court must instruct the jury on all essential elements of the crime. *State* v. *McLaren,* 135 Vt. 291, 296, 376 A.2d 34, 38 (1977).

■ The defendant did not object at trial to the judge's instruction on the element of knowledge. Therefore, this Court will not consider the defendant's claim on appeal unless "the circumstances indicate plain error has occurred." *State* v. *Anderkin,* 145 Vt. 240, 245, 487 A.2d 142, 144 (1984); see *State* v. *Morrill,* 127 Vt. 506, 511, 253 A.2d 142, 145 (1969) ("In order to reach the question attempted to be raised we must first decide whether this is one of those rare and extraordinary cases **where a glaring error** occurred during the trial and was so

in the commission of the felony. *State* v. *Jaramillo,* 140 Vt. 206, 208, 436 A.2d 757, 758–59 (1981). It should be noted that cultivating marijuana, which carries a maximum penalty of five years' imprisonment and $10,000 fine, 18 V.S.A. § 4224(g), is a felony. 13 V.S.A. § 1 ("any offense whose maximum term of imprisonment is more than two years . . . is a felony").

grave and serious that it strikes at the very heart of the [defendant's] constitutional rights.").

The trial court instructed the jury on the issue of knowledge as follows:

> In this case, the essential elements the State must meet the burden of proof on beyond a reasonable doubt are that the defendant, at the time and place alleged, both knowingly and unlawfully cultivated a regulated drug.
>
> . . . .
>
> The term "knowingly" as used here means that the act must be shown to have been done by the defendant voluntarily and not on account of mistake, inadvertence, or accident. This term requires the State to prove beyond a reasonable doubt that the defendant specifically intended his action to result in the cultivation of a regulated drug.

The judge's instructions were not as clear as they might have been. Ideally, the judge should have specifically instructed the jury that the State must prove the defendant knew the plant he was cultivating was a regulated drug. However, it is doubtful that the jury was misled by the judge's charge. We think the instruction, taken as a whole, would lead reasonable jurors to understand that the State had to prove the defendant knew he was cultivating marijuana. See *State* v. *Bishop,* 128 Vt. 221, 230, 260 A.2d 393, 399 (1969) (" 'if as a whole [the charge] breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand' ") (quoting *Fassett* v. *Town of Roxbury,* 55 Vt. 552, 556 (1883)). We find no plain error in the instruction on the element of knowledge, and therefore reject the defendant's claim.

## IV.

The defendant's next argument is that the trial judge's instructions to the jury on circumstantial evidence deprived the defendant of his right to a fair trial.

The trial court discussed circumstantial evidence three times during its instructions to the jury. The first time, the judge explained the difference between direct and circumstantial evidence, and stated that it is common for circumstantial evidence

to be relied upon in criminal cases because "[i]f the law felt that the jurors could not judge the truth from the surrounding circumstances, many crimes could go unpunished." The judge added that "[c]ircumstantial evidence is entitled to the same weight as direct evidence provided it is of such character as to exclude every reasonable hypothesis other than that the defendant is guilty."

At a later point in its jury instructions, the trial court referred to circumstantial evidence a second time, saying that "the jury may decide that circumstantial evidence does not merit the weight of direct evidence, and, therefore, they can accord less weight to it." The judge added that

> it is perfectly proper to return a verdict of guilty based on circumstantial evidence alone, if you find that such evidence establishes the defendant's guilt beyond a reasonable doubt. There is but one standard of proof for criminal convictions, and the test is the same whether the evidence be circumstantial or direct.

At the conclusion of the judge's instructions, counsel for both sides approached the bench and the state's attorney pointed out that *State* v. *Derouchie, supra,* rejected the "exclusion of every reasonable hypothesis of innocence" test as a mandatory instruction in cases involving circumstantial evidence because the test is confusing to juries. 140 Vt. at 445, 440 A.2d at 150. The judge decided that the test should not have been mentioned to the jury, and asked the attorneys how the mistake could be corrected. The defendant's attorney agreed that use of that instruction is "not [the] law any more," but thought the judge's second discussion of circumstantial evidence, which did not mention the test, satisfactorily corrected the judge's earlier statements.

At the conclusion of the bench conference, the judge gave the jury a third instruction concerning circumstantial evidence. This time the jurors were told to ignore the earlier reference to the "reasonable hypothesis" test. Instead, the court stated, the jury could return a verdict of guilty based on circumstantial evidence only "if you find that such evidence establishes the defendant's guilt beyond a reasonable doubt." The judge concluded by reiterating that "[t]here is but one stand-

ard of proof for criminal convictions, and the test is the same whether the evidence was circumstantial or direct."

The defendant makes several arguments regarding these instructions. First, the defendant insists that the trial court should not have told the jury, in its third discussion of circumstantial evidence, not to use the "exclude every reasonable hypothesis of innocence" test.

This Court rejected the inclusion of that test in jury charges in *State* v. *Derouchie, supra,* 140 Vt. at 445, 440 A.2d at 150. The defendant argues, however, that *Derouchie* merely rejected the test as a "mandatory" charge. Pointing out that the Court in *Derouchie* labelled the test "a method for evaluating whether the reasonable doubt standard has been met," 140 Vt. at 444, 440 A.2d at 149, the defendant claims that the test is a useful analytical tool, and that *Derouchie* allows the test to be included in a jury charge whenever the trial judge thinks the test will be helpful to the jurors.

The defendant's interpretation of *Derouchie* is incorrect. *Derouchie* clearly rejected the inclusion of the test in *all* charges. *Derouchie, supra,* 140 Vt. at 445, 440 A.2d at 150. The test serves only to confuse jurors, and to divert their attention from the proper focus of their deliberations: whether the State has proven each element of the crime beyond a reasonable doubt.[3] We reiterate that we reject the "exclude every reasonable hypothesis of innocence" test, and emphasize again that there is only one standard of proof for criminal convictions: proof beyond a reasonable doubt. This standard is the same regardless of whether the evidence is direct, circumstantial, or both, and the jury should not be instructed to apply any other tests or standards.

The defendant also complains that several isolated passages in the instructions on circumstantial evidence were prejudicial and misleading. The defendant failed to object to these passages at trial. Consequently, we will not review these

---

[3] In addition to its potential for confusing jurors, we also rejected the test because it was based on the discredited assumption that circumstantial evidence is less trustworthy than direct evidence, so an additional analytical step is necessary to evaluate the weight of circumstantial evidence. *Derouchie, supra,* 140 Vt. at 443–44, 440 A.2d at 149.

claims now, on appeal, as they do not rise to a level constitut-ing plain error. *State* v. *Anderkin, supra,* 145 Vt. at 245, 487 A.2d at 144; *State* v. *Morrill, supra,* 127 Vt. at 511, 253 A.2d at 145.

■ The defendant also argues that the trial court's in-struction regarding the presumption of innocence was prejudi-cial. The court told the jury that "under our law, the defendant is presumed innocent." The court did not add, however, that the presumption "shall attend the accused until the jury ren-ders a verdict of guilty . . . ." 13 V.S.A. § 6502. The defend-ant did not object to this charge below, and so this objection must also be reviewed under the plain error standard. *State* v. *Anderkin, supra; State v. Morrill, supra.* In other parts of the instruction the judge told the jurors that the defendant was under no obligation to present evidence, and that it was the State's burden to prove the defendant's guilt beyond a reason-able doubt. Taken as a whole, we do not think that the instruc-tions on the presumption of innocence constituted plain error. Accordingly, we reject the defendant's claim.

Finally, the defendant argues that the instructions on cir-cumstantial evidence were contradictory and confusing. We agree that the instructions on circumstantial evidence were not a "model of clarity." We think, however, that the instructions, taken as a whole, adequately explained to the jurors how they were to evaluate the evidence to arrive at a verdict. See *State* v. *Bishop, supra.* Therefore, we reject the defendant's claim.

## V.

The defendant's final argument is that the case should be re-manded for resentencing before a different judge, because the judge who sentenced him considered testimony and other fac-tors that were not properly before the court.

The sentencing court had information from the presentence investigation report available to it. That report revealed that the defendant had no prior criminal record, was self-employed, and was a "good, loving father" to two preschool age children. The report also indicated that the defendant had grown the marijuana for his own personal use, and did not intend to sell or distribute it. At the defendant's sentencing hearing, the state's attorney, the defendant's attorney, and the probation

officer all told the court that suspended sentences and fines were the usual punishments for convictions for possessing or cultivating marijuana. The state's attorney recommended that the defendant be given a suspended sentence, and the defendant's attorney recommended a deferred sentence.

After these recommendations were made, the court granted Sheriff Eldred permission to speak, despite defense counsel's objection. The sheriff told the court that he had received many complaints from residents of the county concerning the presence of drugs and alcohol in area schools. The sheriff pointed out that the defendant has children, stated that these children "certainly are influenced" by the defendant's cultivation of marijuana, and intimated that the defendant's children may contribute to the school drug problem by bringing drugs into their schools when they are old enough to begin school.

At the end of the sentencing hearing, the judge imposed a sentence of one to three years with all but thirty days suspended, and eighty hours of community service. The judge claimed that he did not "intend to make an example" of the defendant, but also stated that "the young people of our community have to be protected somehow . . . . Children do learn by the examples of their parents and their relatives, and I guess that ought to be in the minds of the people here . . . ."

The sentence imposed by the court was within the limits imposed by 18 V.S.A. § 4224(g). (Person convicted for unlawfully cultivating regulated drug may be imprisoned for not more than five years and fined not more than $10,000). The defendant argues, however, that his sentence is excessive when compared to sentences for similar offenses, and that the judge was improperly influenced by Sheriff Eldred's statement in imposing this sentence.

A sentencing court has wide discretion in determining the sentence to be imposed. *State* v. *Cyr,* 141 Vt. 355, 358, 449 A.2d 926, 927 (1982). The sentencing court may consider factors such as the defendant's disposition, family, and prior criminal record, in addition to the nature of the crime for which the defendant was convicted. *In re Morrill,* 129 Vt. 460, 465, 282 A.2d 811, 814–15 (1971). The court may not, however, consider hearsay information concerning criminal activities for which the defendant was never convicted. *State* v. *Williams,*

137 Vt. 360, 364, 406 A.2d 375, 377 (1979), *cert. denied,* 444 U.S. 1048 (1980). Thus the sentencing court's discretion is not absolute; the court may not "rely upon improper or inaccurate data in reaching its sentencing decision." *United States* v. *Sand,* 541 F.2d 1370, 1378 (9th Cir. 1976), *cert. denied sub nom. Scully* v. *United States,* 429 U.S. 1103 (1977).

We think the content of Sheriff Eldred's statement at the sentencing hearing in this case was improper. The statement was irrelevant to the charge for which the defendant was convicted; moreover, the statement contained unsubstantiated insinuations that the defendant was influencing his children to use drugs, and that the defendant was responsible in some way for the drug problem in Orange County schools.

■ The defendant argues that the sentencing judge was influenced by the sheriff's statement. After reviewing the transcript of the sentencing hearing, we agree with the defendant. In imposing sentence the judge reiterated the sheriff's concerns about the school drug problem, and added that children learn by their parents' example. Even though the judge imposed a sentence that was within the statutory limitations, the sentence was substantially harsher than those recommended by the state's attorney, the defendant's attorney, and the probation officer as the "usual" sentences for such crimes. In addition, the harsher sentence was imposed even though the presentence investigation report presented mitigating factors showing that the defendant lacked any prior criminal convictions, had secured employment, was a caring father and had no propensities to commit future crimes. We conclude that the sentencing judge gave weight to an improper factor in imposing the sentence; therefore, we remand the case for resentencing before a different judge.

*Conviction affirmed; sentence vacated and cause remanded for resentencing before a different judge.*